IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

═══════════════════════════════════

CARLOS PETERSON,

                    Plaintiff,                    Civil Action No.
             v.                                   9:09-CV-1056 (GTS/DEP)

J. CECOT, Correctional Officer,

                    Defendant.

═══════════════════════════════════

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

CARLOS PETERSON, *Pro Se*
08-B-3052
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

FOR DEFENDANT:

HON. ERIC T. SCHNIEDERMAN          MEGAN M. BROWN, ESQ.
Attorney General of the            Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

    *Pro se* plaintiff Carlos Peterson, a New York State prison inmate, has

commenced this action pursuant to 42 U.S.C. § 1983 against a corrections

officer stationed at the prison facility in which he was housed at the relevant times, alleging deprivation of his civil rights.  In his complaint, plaintiff maintains that during a search of his cell the defendant confiscated his asthma inhaler, thereby subjecting him to cruel and unusual punishment in violation of the Eighth Amendment.  As relief, plaintiff seeks both an injunction and monetary damages in the amount of five million dollars.

In response to plaintiff's complaint defendant has moved requesting its dismissal for failure to state a claim upon which relief may be granted, additionally arguing that in any event he is entitled to qualified immunity from suit.[1]  For the reasons set forth below, I recommend that defendant's motion to dismiss plaintiff's Eighth Amendment claim against him be granted, with leave to replead.

---

[1]     Defendant also seeks dismissal of plaintiff's claims against co-defendant Clinton Correctional Facility, based upon the Eleventh Amendment.  As will be seen, plaintiff's claims against that defendant were previously dismissed, with prejudice. *See* pp. 7 - 9, *post.*

I.   <u>BACKGROUND</u>[2]

Plaintiff is a prison inmate entrusted to the care and custody of the

New York State Department of Correctional Services ("DOCS").  *See*

*generally* Second Amended Complaint (Dkt. No. 15).  Plaintiff is currently

designated to the Clinton Correctional Facility, located in Dannemora, New

York, where the events giving rise to his claims are alleged to have

occurred.  *Id.*

Plaintiff suffers from asthma, and apparently uses an inhaler to

address the symptoms caused by that condition.  Second Amended

Complaint (Dkt. No. 15) ¶ *2.*  On a date which is not disclosed in plaintiff's

complaint defendant J. Cecot, a corrections officer, confiscated Peterson's

asthma inhaler from a locker located within his cell shortly after plaintiff had

finished using it.  *Id.* at ¶¶ *2-3.*  Plaintiff asserts that without his inhaler he

suffers daily, and has been subjected to a risk of future harm to his lungs.

*Id.* at ¶¶ 5-6.

II.   <u>PROCEDURAL HISTORY</u>

---

[2]    In light of the present procedural posture of this case, the following recitation is
drawn principally from plaintiff's complaint, the contents of which have been accepted
as true for purposes of the pending motion.  *See Erickson v. Pardus,* 551 U.S. 89, 94,
127 S. Ct. 2197, 2200 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,
555-56, 127 S. Ct. 1955, 1965 (2007)); *see also Cooper v. Pate*, 378 U.S. 546, 546,
84 S. Ct. 1733, 1734 (1964).

Plaintiff commenced this action on September 16, 2009, and has been granted leave to proceed *in forma pauperis*.  Dkt. Nos. 1, 21. Peterson filed a Second Amended Complaint in the action on March 22, 2010, at the direction of the court, in order to cure deficiencies detected in his earlier filings.[3]  Dkt. Nos. 13, 15.  In his complaint, as amended, plaintiff names the Clinton Correctional Facility and Corrections Officer J. Cecot as defendants, and asserts a single claim of cruel and unusual punishment under the Eighth Amendment.  *See generally* Second Amended Complaint (Dkt. No. 15).

On September 29, 2010, following his return of an acknowledgment of service form, *see* Dkt. No. 33, defendant Cecot moved for dismissal of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 36.  In that motion defendant argues that 1) plaintiff's claims against the Clinton Correctional Facility are precluded by the Eleventh Amendment; 2) plaintiff's complaint fails to state a cognizable Eighth Amendment claim; and 3) he is entitled to qualified immunity.  *Id.* Despite the fact that the deadline for doing so has passed plaintiff has not

---

[3]   Plaintiff's initial and first amended complaints were dismissed based upon his failure to identify any individuals allegedly responsible for confiscating his inhaler as defendants, instead listing the Clinton Correctional Facility as the sole named defendant.

submitted any opposition to defendant's motion, which is now ripe for

determination and has been referred to me for the issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Dismissal Motion Standard

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure, calls upon a court to gauge the facial

sufficiency of that pleading, utilizing as a backdrop a pleading standard

which, though unexacting in its requirements, "demands more than an

unadorned, the-defendant-unlawfully-harmed me accusation" in order to

withstand scrutiny.  *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S. Ct. 1937,

1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555, 127

S. Ct. 1955, (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure

requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Id.*

While modest in its requirement, that rule commands that a complaint

contain more than mere legal conclusions; "[w]hile legal conclusions can

provide the framework of a complaint, they must be supported by factual

allegations." *Iqbal,* 129 S. Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp.2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.). The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether

6

the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action.  *Erickson*, 127 S. Ct. at 2200 ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

B.    Sufficiency of Plaintiff's Claim Against the Clinton Correctional Facility

One of the two defendants named in plaintiff's initial complaint, and carried through to his most recent amended pleading, is the Clinton Correctional Facility.  In his motion, defendant seeks dismissal of plaintiff's claims against that entity as representing an arm of the state shielded from suit by the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest.[4] *Richards v. State of New York Appellate Division, Second Dep't*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S.

---

[4]    In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State.  As the Supreme Court has reaffirmed relatively recently, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment.  *Northern Ins. Co. of New York v. Chatham County*, 547 U.S. 189, 193, 126 S. Ct. 1689, 1693 (2006).

85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)).  To the extent that a state

official is sued for damages in his official capacity the official is entitled to

invoke the Eleventh Amendment immunity belonging to the state.[5]

*Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985);

*Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991).

In his decision, dated November 12, 2009, District Judge Glenn T.

Suddaby *sua sponte* recognized the Eleventh Amendment implications of

plaintiff's claims against the Clinton Correctional Facility and ordered their

dismissal, with prejudice.   *See* Memorandum-Decision and Order dated

November 12, 2009 (Dkt. No. 6) at pp. 9, 14.  That prison facility is

therefore no longer a defendant in the action, despite reference to it in

plaintiff's second amended complaint, and no further action is necessary to

effectuate dismissal of plaintiff's claims against it.  The clerk will be

directed to amend the court's records to reflect the termination of all claims

against the Clinton Correctional Facility, and the caption of the case has

been reformatted to reflect that the sole remaining defendant is "J. Cecot,

Correctional Officer".

---

[5]   By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

C.    Sufficiency of Plaintiff's Eighth Amendment Claim

In his motion defendant contends that plaintiff's complaint fails to state a cognizable cause of action against him.  In support of that position defendant asserts that plaintiff has failed to establish the existence of a sufficiently serious medical need of constitutional significance, and additionally does not allege facts that demonstrate a plausible claim of subjective indifference on his part to that need.

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of the protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle,* 429 U.S. at 102, 104, 97 S. Ct. at 290, 291.  The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society."  *Id.; see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084 (1986) (citing, *inter alia, Estelle).*  While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement.  *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392,

10

2400 (1981)).  To satisfy their obligations under the Eighth Amendment,
prison officials must "ensure that inmates receive adequate food, shelter,
and medical care, and must take reasonable measures to guarantee the
safety of inmates." *Farmer*, 511 U.S. at 832, 114 S.Ct. at 1976 (quoting
*Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 3200 (1984))
(internal quotations omitted).

A claim alleging that prison officials have violated the Eighth
Amendment by inflicting cruel and unusual punishment must satisfy both
objective and subjective requirements.  *Wright v. Goord*, 554 F.3d 255,
268 (2d Cir. 2009); *Price v. Reilly*, No. 07-CV-2634 (JFB/ARL), 2010 WL
889787, at *7-8 (E.D.N.Y. Mar. 8, 2010).[6]  Addressing the objective
element, to prevail a plaintiff must demonstrate a violation sufficiently
serious by objective terms, "in the sense that a condition of urgency, one
that may produce death, degeneration, or extreme pain exists." *Hathaway
v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).  The second, subjective,
requirement for establishing an Eighth Amendment medical indifference
claim mandates a showing of a sufficiently culpable state of mind, or
deliberate indifference, on the part of one or more of the defendants.

---

[6]   Copies of all unreported decisions cited in this document have been appended
for the convenience of the *pro se* plaintiff.

*Salahuddin*, 467 F.3d at 280 (citing *Wilson v. Seiter*, 501 U.S. 294, 300, 111 S. Ct. 2321, 2325 (1991)).  Deliberate indifference, in a constitutional sense, exists if an official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he [or she] must also draw the inference."  *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979; *Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer*); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same).  Deliberate indifference is a mental state equivalent to subjective recklessness as the term is used in criminal law.  *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839-40, 114 S. Ct. 1970).

Plaintiff's complaint, which is brief, discloses scant details regarding his asthma condition and its resulting symptoms.  When addressing whether asthma represents a medical need of constitutional significance, courts generally distinguish between the condition itself and its manifestation, including through asthma attacks.  *See Scott v. Delsignore*, No. 02-CV-029, 2005 WL 425473, at *9 (W.D.N.Y. Feb. 18, 2005) (acknowledging distinction between having asthma condition and actually

experiencing attack; collecting cases); *Flemming v. Velardi*, No. 02

Civ.4113, 2003 WL 21756108, at *2 (S.D.N.Y. July 30, 2003); *Patterson v.*

*Lilley*, No. 02 Civ.6056, 2003 WL 21507345, at *4 (S.D.N.Y. June 30,

2003) ("Being an asthmatic (a person susceptible to asthma attacks) is not

a condition, in Eighth Amendment parlance, that is severe or 'sufficiently

serious.'  The existence of the condition is distinct from the situation in

which an inmate is suffering an actual attack.").  A plaintiff who fails to

allege and prove that a defendant's actions have caused or exacerbated

symptomology associated with asthma cannot demonstrate that his or her

condition represents a serious medical need.  *E.g.*, *Patterson*, 2003 WL

21507345, at *4 (asthma not serious medical need when the plaintiff did

not allege any discomfort or any symptoms of an emergent attack).  *See*

*also Flemming*, 2003 WL 21756108, at *2 ("Difficulty breathing due to

asthma may be a serious medical condition, depending on the severity of

the asthma attack.").

Plaintiff's allegation that he suffers from asthma fails to appreciate

the distinction between the condition itself and its resulting symptomology,

for purposes of Eighth Amendment analysis, and does not disclose into

which category his claims fall.  The allegation that defendant's actions

Case 9:09-cv-01056-GTS-DEP   Document 41   Filed 03/08/11   Page 14 of 76

have subjected Peterson to risk of future harm does not suffice to resolve this question. The further assertion that plaintiff "now suffer[s] every day" because of the confiscation of his inhaler could perhaps be construed as providing some of the factual information that is otherwise lacking, but does not go further to demonstrate a plausible claim that he experienced a serious medical need at the relevant times. Nonetheless, I recommend a finding that this additional allegation is insufficient to establish that plaintiff's claim of deliberate indifference is plausible, instead of merely conceivable. *Contrast Kearsey v. Williams,* No. 99 Civ. 8646 DAD, 2005 WL 2125874, at *4 (S.D.N.Y. Sept. 1, 2005) (on motion for summary judgment, proof that plaintiff complained on three separate occasions of being unable to breathe as a result of his asthma, that his chest had "tightened up" and that he was experiencing chest pains, was deemed sufficient to establish a serious medical need of constitutional portions for purposes of the Eighth Amendment).

Defendant also maintains that plaintiff has not plausibly alleged his subjective indifference to his serious medical need. Indeed, plaintiff's second amended complaint is similarly devoid of specifics amplifying upon his allegation that defendant confiscated his inhaler. The complaint does

not disclose, for example, the circumstances under which it was confiscated, whether it was viewed as contraband, and how long Peterson was deprived of its use.  Similarly, the complaint does not set forth facts to show defendant's awareness of plaintiff's condition and his subjective indifference to Peterson's medical needs.  I therefore recommend a finding that plaintiff's complaint fails to plausibly establish defendant's deliberate indifference to a serious medical need.

In sum, plaintiff's complaint – which is bereft of specifics – fails to set forth facts to plausibly allege both the existence of a serious medical need and defendant's indifference to that need.  I therefore recommend that defendant's motion to dismiss be granted.

D.   Leave To Replead

Where, as here, a complaint fails to state a plausible claim upon which relief may be granted, the next question to be addressed is whether to permit the plaintiff to amend the defective pleading in order to cure the perceived deficiencies.   Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend *at least* once if there is any indication that a valid claim might be stated. *Branum*, 927 F.2d at 704-05 (emphasis added); *see also* Fed. R. Civ. P. 15(a) (leave to

15

amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief).  The court must therefore determine whether plaintiff is entitled to the benefit of this general rule, given the procedural history of the case.

The fact that two prior complaints submitted by the plaintiff in this action have been dismissed as legally deficient gives room for pause when determining whether he should be granted leave to amend.  Nonetheless, as was previously noted, those dismissals were based upon his failure to name any individual defendant as bearing responsibility for the constitutional deprivations alleged, and did not address the legal sufficiency of plaintiff's allegations concerning the Eighth Amendment violation.  Under the circumstances, I therefore recommend that plaintiff be granted leave to amend.

    E.    Qualified Immunity

As an alternative basis for seeking dismissal of plaintiff's claims against him, in his motion defendant argues that he is entitled to qualified immunity from suit.  As a basis for this contention, defendant asserts that

"there was no reason for him to believe that by confiscating an asthma inhaler that [sic] he was violating any of the plaintiff's constitutional rights." Defendants' Memorandum (Dkt. No. 26-1) at p. 9.

Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982) (citations omitted). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his or her actions were] lawful, in light of clearly established law and the information the officer[ ] possessed." *Kelsey v. County of Schoharie*, 567 F.3d 54, 61 (2d Cir. 2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815 (2009) .

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001), the

Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims."  *Pearson*, 555 U.S. at ___, 129 S.Ct. at 816.  The first step required the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[7] *Kelsey*, 567 F.3d at 61, with "the second step being whether the right is clearly established", *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 430 n.9 (citing *Saucier*).[8]  Expressly recognizing that the purpose of the qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently retreated from the prior *Saucier* two-step mandate, concluding in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to

---

[7]    In making the threshold inquiry, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  *Saucier,* 533 U.S. at 201, 121 S. Ct. 2151.

[8]    In *Okin*, the Second Circuit clarified that the "'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful."  *Okin*, 577 F.3d at 433, n.11 (citation omitted).

exercise their sound discretion in deciding which of the . . .  prongs of the

qualified immunity analysis should be addressed first in light of the

circumstances of the particular case at hand."[9]  *Pearson*, 555 U.S. at  ___,

129 S.Ct. at 818, 821.  In other words, as recently emphasized by the

Second Circuit, the courts "are no longer *required* to make a 'threshold

inquiry' as to the violation of a constitutional right in a qualified immunity

context, but we are free to do so."  *Kelsey*, 567 F.3d at 61(citing *Pearson*,

129 S. Ct. at 821) (emphasis in original).

 For courts engaging in a qualified immunity analysis, "the question

after *Pearson* is 'which of the two prongs . . . should be addressed in light

of the circumstances in the particular case at hand.'"  *Okin*, 577 F.3d 430

n.9 (quoting *Pearson*).  "The [*Saucier* two-step] inquiry is said to be

appropriate in those cases where 'discussion of why the relevant facts do

not violate clearly established law may make it apparent that in fact the

relevant facts do not make out a constitutional violation at all.'"  *Kelsey*, 567

F.3d at 61 (quoting *Pearson*, 129 S. Ct. at 818).

---

 [9]    Indeed, because qualified immunity is "an immunity from suit rather than a
mere defense to liability. . .", *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806
(1985), the Court has "repeatedly . . . stressed the importance of resolving immunity
questions at the earliest possible stage in the litigation."  *Pearson*, ___ U.S. at ___,
129 S.Ct. at 815 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 524 (1991)
(per curiam)).

Generally speaking, qualified immunity is not particularly well-suited for application at the dismissal motion stage; a defendant seeking to assert qualified immunity in a motion brought pursuant to Rule 12(b)(6) "faces a formidable hurdle." *McKenna v. Wright,* 386 F.3d 432, 434 (2d Cir. 2004). When presented in such a setting, a claim of qualified immunity will shield a defendant from suit only "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitled him to relief." *Id.*; *see also Kearsey,*, 2005 WL 2125874, at *5.

In this case the facts alleged in plaintiff's complaint, when all inferences are drawn and ambiguities are resolved in his favor, do not support defendant's claim of entitlement to qualified immunity.  Although plaintiff's complaint does not disclose when the relevant events occurred, surely by the time of defendant's seizure of Peterson's inhaler the law regarding deliberate indifference to an inmate's serious medical needs was clearly established and fully developed.  It cannot be said with absolute certainty at this early procedural juncture that defendant Cecot did not appreciate the nature of the inhaler seized and its significance, as well as plaintiff's need to use the inhaler to address his asthma symptomology. Although on a more fully developed record defendant may ultimately

establish his entitlement to qualified immunity, I recommend at this juncture that his motion to dismiss on the basis of qualified immunity be denied, without prejudice to renewal at a later stage of the proceedings.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's Eighth Amendment claim in this action, which is concisely stated and lacking in amplification regarding the relevant events, fails to allege facts sufficient to support a plausible claim of deliberate medical indifference as against Corrections Officer J. Cecot, the sole remaining defendant in the case, and should therefore be dismissed, though with leave to replead.  Turning to the defendant's alternative basis for seeking dismissal, I find the defendant has not established his entitlement to qualified immunity from suit at this early stage in the case.  Accordingly, it is hereby

RECOMMENDED that defendant's motion to dismiss plaintiff's second amended complaint (Dkt. No. 36) be GRANTED, with leave to plaintiff to file an amended complaint within thirty (30) days of entry of an order adopting this recommendation; and it further

ORDERED, that the clerk adjust its record to reflect dismissal of all claims in this action against defendant Clinton Correctional Facility; and it

is further

ORDERED, that the clerk also serve a copy of the Report and

Recommendation upon the parties in accordance with this court's local

rules.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

written objections to the foregoing report.  Such objections must be filed

with the clerk of the court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).


David E. Peebles
U.S. Magistrate Judge

Dated:      March 8, 2011
            Syracuse, NY



697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

C

United States District Court,
E.D. New York.
Anthony PRICE, Plaintiff,
v.
Sheriff Edward REILLY, Kim Edwards, RN III, Perry
Intal, Mary Sullivan, RN, Dr. Benjamin Okonta, MD,
and Nassau University Medical Center, Defendants.
**No. 07-CV-2634 (JFB)(ARL).**

March 8, 2010.

**Background:** Pro se inmate, who suffered from end stage
renal disease requiring dialysis, filed § 1983 action against
sheriff, nurse practitioner, physician, and medical center,
alleging violations of the Eighth Amendment for
defendants' failure to provide adequate medical care.
Defendants moved for summary judgment.

**Holdings:** The District Court, Joseph F. Bianco, J., held
that:

(1) there was no evidence that administrative remedy was
available to inmate;

(2) prison medical staff's modification of inmate's
medication dosage did not constitute deliberate
indifference to his medical needs;

(3) prison's failure to provide food with inmate's
medication was not sufficiently serious to satisfy objective
prong of test for deliberate indifference to serious medical
needs;

(4) medical staff did not act with culpable intent to
consciously disregard inmate's serious medical needs;

(5) genuine issue of material fact as to whether prison
medical staff was aware of, and consciously disregarded
inmate's request for a kidney transplant test precluded
summary judgment;

(6) genuine issue of material fact as to whether inmate's
shoulder pain was a serious medical condition precluded
summary judgment;

(7) sheriff was not liable under § 1983; but

(8) genuine issues of material fact precluded summary

judgment on § 1983 liability of registered nurse and
doctor.

Motion granted in part and denied in part.

West Headnotes

**[1] Federal Civil Procedure 170A** &#9758;    **2547.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2547 Hearing and Determination
                    170Ak2547.1 k. In general. Most Cited
Cases
Generally, plaintiffs' failure to respond or contest facts set
forth by defendants in their statement of facts, submitted
in support of summary judgment, constitutes admission of
those facts, and facts are accepted as undisputed under
local rule. U.S.Dist.Ct.Rules S.D.N.Y., Civil Rule 56.1.

**[2] Federal Civil Procedure 170A** &#9758;    **25**

170A Federal Civil Procedure
    170AI In General
        170AI(B) Rules of Court in General
            170AI(B)1 In General
                170Ak25 k. Local rules of District Courts.
Most Cited Cases
District court has broad discretion to determine whether to
overlook a party's failure to comply with local court rules.

**[3] Federal Civil Procedure 170A** &#9758;    **2547.1**

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2547 Hearing and Determination
                    170Ak2547.1 k. In general. Most Cited

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

Cases

District court, when analyzing motion for summary judgment by sheriff and medical personnel in inmate's pro se action alleging cruel and unusual punishment, would treat as admitted only those facts in defendants' statement of facts that were supported by admissible evidence and not controverted by other admissible evidence in the record, given that inmate was acting pro se, he failed to file and serve a response to defendant's statement, but he had identified arguments and factual assertions in statement with which he disagreed. U.S.C.A. Const.Amend. 8; U.S.Dist.Ct.Rules S.D.N.Y., Civil Rule 56.1.

[4] Federal Civil Procedure 170A          657.5(1)

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(1) k. In general. Most Cited Cases
Court must construe pro se complaint broadly, and interpret it to raise the strongest arguments that it suggests.

[5] Attorney and Client 45          62

45 Attorney and Client
    45II Retainer and Authority
        45k62 k. Rights of litigants to act in person or by attorney. Most Cited Cases

Federal Civil Procedure 170A          657.5(1)

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(A) Pleadings in General
            170Ak654 Construction
                170Ak657.5 Pro Se or Lay Pleadings
                    170Ak657.5(1) k. In general. Most Cited Cases

Federal Civil Procedure 170A          2546

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)3 Proceedings
                170Ak2542 Evidence
                    170Ak2546 k. Weight and sufficiency.
Most Cited Cases
Though pro se litigant's pleadings and other submissions are afforded wide latitude, pro se party's conclusory assertions, completely unsupported by evidence, are not sufficient to defeat motion for summary judgment.

[6] Civil Rights 78          1304

78 Civil Rights
    78III Federal Remedies in General
        78k1304 k. Nature and elements of civil actions.
Most Cited Cases
To prevail on a claim under § 1983, a plaintiff must show: (1) deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C.A. § 1983.

[7] Prisons 310          317

310 Prisons
    310II Prisoners and Inmates
        310II(H) Proceedings
            310k316 Exhaustion of Other Remedies
                310k317 k. In general. Most Cited Cases
In order to determine if prisoner exhausted his administrative remedies prior to commencement of lawsuit, as required by PLRA, court must first establish from a legally sufficient source that an administrative remedy is applicable, and that the particular complaint does not fall within an exception. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

[8] Prisons 310          313

310 Prisons

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

310II Prisoners and Inmates
310II(H) Proceedings
310k307 Actions and Litigation
310k313 k. Trial. Most Cited Cases
Whether administrative remedy was available to prisoner in a particular prison or prison system, and whether such remedy was applicable to grievance underlying prisoner's suit, for purpose of PLRA's exhaustion requirement, are not questions of fact; rather, such issues either are, or inevitably contain, questions of law. Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

[9] Civil Rights 78 ☞ 1319

78 Civil Rights
78III Federal Remedies in General
78k1314 Adequacy, Availability, and Exhaustion of State or Local Remedies
78k1319 k. Criminal law enforcement; prisons. Most Cited Cases
Sheriff and prison medical staff provided no evidence that an administrative remedy was available to inmate who suffered from end state renal disease, and who sought, but did not receive, medical testing to determine if he was a candidate for kidney transplant, and thus inmate's § 1983 action alleging violations of Eighth Amendment would not be dismissed for his failure to exhaust administrative remedies under PLRA; defendants failed to establish procedural framework for grievance resolution at the prison or the availability of any administrative remedies for prisoner's situation. U.S.C.A. Const.Amend. 8; Prison Litigation Reform Act of 1995, § 101(a), 42 U.S.C.A. § 1997e(a).

[10] Sentencing and Punishment 350H ☞ 1533

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1533 k. Deliberate indifference in general. Most Cited Cases
Test for determining whether prison official's actions or omissions rise to level of "deliberate indifference" in violation of the Eighth Amendment, as will allow recovery by prisoner in federal civil rights action, is twofold: first, prisoner must demonstrate that he is incarcerated under

conditions posing substantial risk of serious harm, and second, prisoner must demonstrate that defendant prison officials possessed sufficient culpable intent. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

[11] Sentencing and Punishment 350H ☞ 1533

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1533 k. Deliberate indifference in general. Most Cited Cases
Second prong of test for determining whether prison officials acted with deliberate indifference to rights of prisoners in violation of the Eighth Amendment, that of "culpable intent," in turn involves two-tier inquiry; specifically, prison official has sufficient culpable intent if he has knowledge that inmate faces substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate harm. U.S.C.A. Const.Amend. 8.

[12] Sentencing and Punishment 350H ☞ 1546

350H Sentencing and Punishment
350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1546 k. Medical care and treatment. Most Cited Cases
Mere fact that an inmate's underlying disease is a "serious medical condition" does not mean that prison staff's allegedly incorrect treatment of that condition automatically poses an "objectively serious health risk," in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8.

[13] Prisons 310 ☞ 192

310 Prisons
310II Prisoners and Inmates
310II(D) Health and Medical Care
310k191 Particular Conditions and Treatments
310k192 k. In general. Most Cited Cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

**Sentencing and Punishment 350H** 🔑 **1546**

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
     350HVII(H) Conditions of Confinement
      350Hk1546 k. Medical care and treatment. Most Cited Cases

Even though inmate's end stage renal disease requiring dialysis was serious medical condition, prison medical staff did not act with deliberate indifference to inmate's medical needs in violation of his Eighth Amendment rights by modifying his medication dosage, since reduction in medication levels posed no objectively serious health risk to inmate; only injury inmate suffered was an increase in phosphorous levels, which was correctable, and a slight rash. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[14] Prisons 310** 🔑 **192**

310 Prisons
   310II Prisoners and Inmates
     310II(D) Health and Medical Care
      310k191 Particular Conditions and Treatments
       310k192 k. In general. Most Cited Cases

**Sentencing and Punishment 350H** 🔑 **1546**

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
     350HVII(H) Conditions of Confinement
      350Hk1546 k. Medical care and treatment. Most Cited Cases

Even though inmate's prescriptions indicated that his medications for renal disease were to be taken with meals, prison officials' failure to provide food with the medication was not sufficiently serious to satisfy objective prong of test for deliberate indifference to inmate's serious medical needs, in violation of Eighth Amendment; inmate did not suffer any harm from taking medicine without food. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[15] Sentencing and Punishment 350H** 🔑 **1546**

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
     350HVII(H) Conditions of Confinement
      350Hk1546 k. Medical care and treatment. Most Cited Cases

An inmate's mere disagreement with prison officials' prescribed medication dosage is insufficient as a matter of law to establish officials' "deliberate indifference" to his medical needs, in violation of the Eighth Amendment. U.S.C.A. Const.Amend. 8.

**[16] Prisons 310** 🔑 **192**

310 Prisons
   310II Prisoners and Inmates
     310II(D) Health and Medical Care
      310k191 Particular Conditions and Treatments
       310k192 k. In general. Most Cited Cases

**Sentencing and Punishment 350H** 🔑 **1546**

350H Sentencing and Punishment
   350HVII Cruel and Unusual Punishment in General
     350HVII(H) Conditions of Confinement
      350Hk1546 k. Medical care and treatment. Most Cited Cases

Even though inmate disagreed with medical treatment he received at prison, medical staff did not act with culpable intent to consciously disregard inmate's serious medical needs, in violation of his Eighth Amendment rights, by adjusting the dosage levels of his prescription medication for renal disease; dosage inmate received adequately treated his condition, he suffered no injury from modification of dosage other than increased phosphorous levels, and officials changed dosage to correct those levels. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[17] Federal Civil Procedure 170A** 🔑 **2491.5**

170A Federal Civil Procedure
   170AXVII Judgment
     170AXVII(C) Summary Judgment
      170AXVII(C)2 Particular Cases
       170Ak2491.5 k. Civil rights cases in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

general. Most Cited Cases
Genuine issue of material fact as to whether prison
medical staff was aware of, and consciously disregarded
inmate's request for a kidney transplant test, precluded
summary judgment in inmate's § 1983 action alleging
officials' deliberate indifference to his medical needs, in
violation of Eighth Amendment. U.S.C.A. Const.Amend.
8; 42 U.S.C.A. § 1983.

**[18]** Sentencing and Punishment 350H ☞    1546

350H Sentencing and Punishment
    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical care and treatment. Most
Cited Cases
An inmate's chronic pain can constitute a "serious medical
condition" for purposes of claim of deliberate indifference
to a serious medical need under the Eighth Amendment.
U.S.C.A. Const.Amend. 8;.

**[19]** Federal Civil Procedure 170A ☞    2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil rights cases in
general. Most Cited Cases
Genuine issue of material fact as to whether inmate's
shoulder pain was a serious medical condition, and
whether prison medical staff acted with deliberate
indifference by failing to prescribe pain medication or take
x-rays, despite inmate's ongoing complaints, precluded
summary judgment, in inmate's § 1983 Eighth Amendment
claims against medical staff. U.S.C.A. Const.Amend. 8; 42
U.S.C.A. § 1983.

**[20]** Civil Rights 78 ☞    1355

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1355 k. Vicarious liability and respondeat

superior in general; supervisory liability in general. Most
Cited Cases
Supervisor liability in § 1983 action can be shown in one
or more of the following ways: (1) actual direct
participation in the constitutional violation, (2) failure to
remedy a wrong after being informed through a report or
appeal, (3) creation of a policy or custom that sanctioned
conduct amounting to a constitutional violation, or
allowing such a policy or custom to continue, (4) grossly
negligent supervision of subordinates who committed a
violation, or (5) failure to act on information indicating
that unconstitutional acts were occurring. 42 U.S.C.A. §
1983.

**[21]** Civil Rights 78 ☞    1358

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1358 k. Criminal law enforcement; prisons.
Most Cited Cases
Sheriff was not liable under § 1983 for alleged deliberate
indifference to medical needs of inmate related to inmate's
end stage renal disease or chronic shoulder pain; there was
no showing that sheriff was personally involved in denying
medical treatment to inmate, or that there was a custom or
policy at prison of allowing alleged constitutional
violations. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. §
1983.

**[22]** Federal Civil Procedure 170A ☞    2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil rights cases in
general. Most Cited Cases
Genuine issue of material fact as to whether registered
nurse on prison medical staff was personally involved in
prison's alleged failure to arrange for inmate's kidney
transplant test precluded summary judgment in inmate's §
1983 action alleging officials' deliberate indifference to his
medical needs, in violation of Eighth Amendment.
U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

**[23]** Civil Rights 78 ⚷      1358

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1358 k. Criminal law enforcement; prisons.
Most Cited Cases
If prison doctor denies medical treatment to an inmate, that doctor is "personally involved" in alleged constitutional violation for purposes of § 1983 liability. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[24]** Federal Civil Procedure 170A ⚷      2491.5

170A Federal Civil Procedure
    170AXVII Judgment
        170AXVII(C) Summary Judgment
            170AXVII(C)2 Particular Cases
                170Ak2491.5 k. Civil rights cases in general. Most Cited Cases
Genuine issue of material fact as to whether doctor denied medical treatment to inmate suffering from end stage renal disease, precluded summary judgment in inmate's § 1983 action alleging prison officials' deliberate indifference to his medical needs, in violation of Eighth Amendment. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.
**\*347** Anthony Price, pro se.

Edward J. Troy, Law Office of Edward J. Troy, Greenlawn, NY, for the Defendants.

**\*348** MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Anthony Price (hereinafter "Price" or "plaintiff") alleges, pursuant to 42 U.S.C. § 1983, that Sheriff Edward Reilly, Kim Edwards, RN, Perry Intal, Mary Sullivan, RN, Dr. Benjamin Okonta, and Nassau University Medical Center (hereinafter "defendants") violated his Eighth Amendment rights by acting with deliberate indifference to his serious medical needs while plaintiff was incarcerated at the Nassau County

Correctional Center (hereinafter "NCCC"). Specifically, plaintiff alleges that defendants: (1) prescribed an incorrect dosage of medication for his renal disease; (2) failed to get him tested for a kidney transplant list; and (3) failed to adequately treat him for shoulder pain. Defendants have moved for summary judgment on all of plaintiffs' claims. For the reasons set forth below, defendants' motion is granted in part and denied in part. Specifically, defendants' motion is granted with respect to plaintiff's claim regarding the dosage of his prescription medication and with respect to all of plaintiff's claims against Sheriff Reilly. Defendants' motion is denied in all other respects.

I. FACTS

**[1][2][3]** The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the defendants' Rule 56.1 statement of facts.<sup>FN1</sup> They are not findings of fact by the Court, but rather are assumed to be true for the purposes of deciding this motion. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party-here, the plaintiff. *See Capobianco v. City of New York,* 422 F.3d 47, 50 n. 1 (2d Cir.2005). Unless otherwise noted, where a party's 56.1 statement or deposition is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.

FN1. The Court notes that plaintiff failed to file and serve a response to defendants' Local Rule 56.1 Statement of Facts in violation of Local Civil Rule 56.1. Generally, a "plaintiff['s] failure to respond or contest the facts set forth by the defendants in their Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed." *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 504 (S.D.N.Y.2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F.Supp.2d 134, 139 (S.D.N.Y.2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir.2001) (citations omitted); *see*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

*also* *Giliani v. GNOC Corp.,* No. 04 Civ. 2935(ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 26, 2006)* (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). In his opposition papers, plaintiff identifies defendants' arguments and factual assertions with which he disagrees. In the exercise of its broad discretion, and given plaintiff's *pro se* status, the Court will deem admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy,* 292 F.Supp.2d at 504-05. Furthermore, the Court has carefully reviewed all of the parties' submissions, including plaintiff's deposition, to determine if plaintiff has any evidence to support his claims.

A. Arrival at NCCC and Medication

Plaintiff was incarcerated in the Nassau County Correctional Center from January 7, 2007 to December 11, 2007. (Price Dep. at 6, 35.) Plaintiff has end stage renal disease and has been on dialysis since 2004 related to kidney failure. (*Id.* at 10; Defs.' 56.1 ¶ 2.) Plaintiff takes two daily medications, Renagel and PhosLo, for this condition. (Price Dep. at 10.) Before arriving **349** at the NCCC,[FN2] plaintiff was taking two 800 milligram pills of Renagel three times a day and two 667 milligram pills of PhosLo three times a day. (*Id.* at 12-13.)

FN2. Plaintiff was incarcerated at the Elmira correctional facility in 2005 and 2006. (Price Dep. at 7-8.)

When plaintiff arrived at the NCCC, he was interviewed by Perry Intal, a nurse practitioner in the medical intake department. (*Id.* at 21-22.) Plaintiff told Intal about his medical history, including that he was a dialysis patient and that he took medications. (*Id.* at 22.) Plaintiff was given a prescription for one 800 milligram pill of Renagel two times a day and one 667 milligram pill of PhosLo two times a day. (*Id.* at 23-24.) Two or three weeks later, plaintiff went to dialysis treatment and a blood test revealed high phosphorous levels. (*Id.* at 25-26.) As a

result, plaintiff was given an increased dosage of medication. (*Id.* at 25-27.) Thereafter, plaintiff's phosphorous levels decreased and about one month later (*id.* at 30-31), his dosage was decreased to one 800 milligram pill of Renagel three times a day and two 667 milligram pills of PhosLo three times a day. (*Id.* at 31-33.) This was the dosage plaintiff received for the rest of his incarceration at the NCCC.[FN3] (*Id.* at 32-33.) Plaintiff believed that the dosage he was receiving was "wrong" and that it was "hurting" him. (*Id.* at 59-60.) However, the more plaintiff complained about the dosage hurting him, "the more it seemed like the people got aggravated." (*Id.* at 60.) In addition, plaintiff's prescriptions for Renagel and PhosLo indicate that the medications were to be taken with meals. (*See* Defs.' Ex. E.) Plaintiff alleges, however, that the medications were sometimes given to him without food or at times that interfered with his meals. (Price Dep. at 23, 60.)

FN3. Plaintiff testified that, at the time of his deposition, he was receiving two 800 milligram pills of Renagel three times a day and two 667 milligram pills of PhosLo three times a day at the Fishkill correctional facility. (Price Dep. at 11-12.)

Besides receiving medication, plaintiff also received dialysis treatment three times a week at the Nassau University Medical Center. (*Id.* at 30.) On some occasions, plaintiff refused dialysis treatment because he "was feeling good" and "wanted to take a break" from treatment. (*Id.* at 56.) Plaintiff's regular medical treatment at the hospital also included a blood test every 30 days. (*Id.* at 27-28, 30.)

B. Kidney Transplant Request

In February or March 2007, plaintiff spoke with a social worker named "Susan" about getting tested for a kidney transplant. (*Id.* at 76.) A test was required before an inmate could be placed on a waiting list for kidney transplants. (*Id.* at 80-81.) Only two hospitals in the area dealt with such matters: Stony Brook and a hospital in Westchester County. (*Id.* at 75-76.) Susan tried to contact Dr. Benjamin Okonta (hereinafter "Okonta") at Nassau University Medical Center in or about February or March

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

2007 (*id.* at 76-77), but Susan told plaintiff that Okonta did not get back to her.[FN4] (*Id.* at 65-66, 74-78.) Susan also submitted a letter to Okonta in July 2007, stating: "As per our conversation on 7/27/07, I am re-submitting for your review my request [for] your medical services on behalf of our renal dialysis pt., Anthony Price." (*Id.* at 77-78; Defs.' Ex. K.) Plaintiff never received a response from Okonta. (Price Dep. at 82.)

> FN4. Plaintiff never interacted with Okonta except through Susan, the social worker. (Price Dep. at 73-74.)

Susan also submitted a letter to Nurse Mary Sullivan (hereinafter "Sullivan"), the **\*350** day supervisor at the NCCC medical center, stating: "As per our telephone conversation, I am submitting in writing Anthony Price's request for referral and evaluation to a kidney transplant center ... Stonybrook Univ. Medical Ctr." (Def.'s Ex. K.) At some point in time, plaintiff was called down to the NCCC medical center and was told by Sullivan that defendants knew about plaintiff's request to get on the kidney transplant list but that they had "other priorities right now." (Price Dep. at 70.) Plaintiff believed Sullivan was referring to his other health issues. (*Id.* at 70.) Plaintiff did not ask when he would be tested for the kidney transplant list. (*Id.* at 71.)

On September 25, 2007, plaintiff filed a formal grievance regarding his request to be tested for the kidney transplant list.[FN5] (*Id.* at 85.) Plaintiff stated on his grievance form that he had "been waiting to take the test I need to take to get on the kidney transplant list" and that his social worker had told him that she had forwarded the paperwork to the jail, but could not get a response. (Defs.' Ex. F.) Plaintiff requested that he be "given the test to see if I'm a candidate for possibly a kidney transplant." (*Id.*) By interdepartmental memorandum dated September 27, 2007, the Inmate Grievance Coordinator informed plaintiff that the medical grievance "is being discussed with and turned over to the Health Services Administrator. The medical unit will evaluate you. A Grievance Unit Investigator will contact you at a later date to conduct an evaluation of your status and to closeout the paperwork." (*Id.*) In another memo dated October 5, 2007, defendant Kim Edwards,[FN6] informed plaintiff:

> FN5. This was the only formal medical grievance filed by plaintiff. (Price Dep. at 85.)

> FN6. Edwards never wrote medical orders for plaintiff or examined plaintiff. (Price Dep. at 61.) Plaintiff had no interaction with Edwards except her written response to plaintiff's grievance. (*Id.* at 67.)

The social worker can only inform you of treatment options that are available for your medical problem. If you are in need of a "test", documentation must be provided by the attending physician that is responsible for your renal treatment.

(*Id.*) Plaintiff interpreted this response from Edwards to mean that the matter was now in the hands of the medical department, and so he did not further proceed with the grievance and "did not feel it was necessary." (Pl.'s Opp. at 3.)[FN7] Therefore, plaintiff "signed off on the grievance," saying that he had "read it and accepted it." (Price Dep. at 88.)

> FN7. Although plaintiff does not offer this explanation in his deposition, the Court construes the *pro se* plaintiff's sworn "verified rebuttal" to defendants' motion for summary judgment as an evidentiary submission. *See Patterson v. County of Oneida,* 375 F.3d 206, 219 (2d Cir.2004) ("[A] verified pleading, to the extent that it makes allegations on the basis of the plaintiff's personal knowledge, and not merely on information and belief, has the effect of an affidavit and may be relied on to oppose summary judgment."); *see also Hailey v. N.Y. City Transit Auth.,* 136 Fed.Appx. 406, 407-08 (2d Cir.2005) ("The rule favoring liberal construction of *pro se* submissions is especially applicable to civil rights claims.").

Plaintiff did not get the requested test during the remainder of his incarceration at the NCCC. (*Id.* at 90.) Defendants have submitted evidence that they made efforts to get plaintiff tested and, in fact, scheduled plaintiff for a test at Stony Brook University Hospital on November 29, 2007, but that the test had to be cancelled due to "unforeseen circumstances"; the test was

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

re-scheduled for January 10, 2008. (Defs.' Ex. G, Reschke Aff. ¶¶ 6-7.) Plaintiff was not informed about any scheduled test (Pl.'s Opp. at 2), and he was **351** transferred to a different facility in December 2007. (Price Dep. at 35; Reschke Aff. ¶ 7.)

### C. Shoulder Pain

Plaintiff began complaining about shoulder pain to the medical department at the NCCC on January 17, 2007, stating that his right shoulder was "extremely hurting." (Price Dep. at 36; Defs.' Ex. E, Sick Call Request, Jan. 17, 2007.) Plaintiff had received treatment for shoulder pain in the past, including a shot of Cortisone while at the Elmira facility (Price Dep. at 38, 53-54; Defs.' Ex. E, Sick Call Request, Apr. 14, 2007.) After the January 17 complaint, plaintiff was seen a couple of days later and given medication to rub on his shoulder. (Price Dep. at 41.) The medication did not help with the discomfort, and so plaintiff complained again later in January. (*Id.* at 42-43.) Although defendants gave plaintiff Motrin and Naprosyn for the pain, no x-rays were taken for several months. (*Id.* at 44, 55; Defs.' Ex. H, Edwards Aff. ¶ 4.) The pain medication continued to be ineffective, and plaintiff continued to complain. (*See, e.g., id.* at 45, 51.) For instance, in June 2007, plaintiff complained that his right shoulder "hurts really bad." (Def.'s Ex. E, Sick Call Request, June 12, 2007.) Plaintiff never refused medication for his shoulder. (Price Dep. at 56.) When plaintiff eventually was given x-rays, in April and November 2007 (Edwards Aff. ¶ 4), plaintiff was told that nothing was wrong with his shoulder.[FN8] (Price Dep. at 44; *see also* Defs.' Ex. J, Discharge Summary, November 2007 ("Although no definite evidence of venous thrombosis is seen with Rt. upper extremity, short segment acute thrombosis cannot be reliably excluded, Ultrasound might provide additional information....").) Plaintiff states that, with respect to his right shoulder, he currently wears a brace for carpal tunnel syndrome, has a separated shoulder, and takes shots for the pain. (Pl.'s Opp. at 4.)

> FN8. Plaintiff testified that he stopped complaining about his shoulder at some point because he was frustrated that defendants were not helping. (Price Dep. at 54-55.) There is evidence that plaintiff complained about his shoulder at least as late as June 2007, and again

complained in November 2007, which resulted in the taking of additional x-rays. (*See* Def.'s Ex. E, Sick Call Request, June 21, 2007; Defs.' Ex. J.)

### II. PROCEDURAL HISTORY

On June 28, 2007, plaintiff filed the initial complaint in this action. Plaintiff filed an amended complaint on August 20, 2007 alleging, pursuant to Section 1983, that defendants Sheriff Edward Reilly, Kim Edwards, Perry Intal, and Nassau University Medical Center violated his Eighth Amendment rights with respect to his medication dosage, kidney transplant request, and shoulder pain. On November 14, 2007, plaintiff filed another complaint in a separate action (No. 07-CV-4841) making substantially the same allegations and expanding on his allegations regarding the kidney transplant request. This complaint named Mary Sullivan and Dr. Benjamin Okonta, as well as the Nassau University Medical Center, as defendants. By Order dated July 11, 2008, the Court consolidated both actions (Nos. 07-CV2634 and 07-CV-4841) because the allegations in the two actions were "factually intertwined."

Defendants moved for summary judgment on May 29, 2009.[FN9] Plaintiff submitted**352** an opposition to the motion on August 3 and August 11, 2009.[FN10] Defendants replied on August 20, 2009. Plaintiff submitted a surreply on October 6, 2009. This matter is fully submitted.

> FN9. Pursuant to Local Rule 56.1, defendants also served plaintiff with the requisite notice for *pro se* litigants opposing summary judgment motions. *See Irby v. N.Y. City Transit Auth.,* 262 F.3d 412, 414 (2d Cir.2001) ("And we remind the district courts of this circuit, as well as summary judgment movants, of the necessity that pro se litigants have actual notice, provided in an accessible manner, of the consequences of the pro se litigant's failure to comply with the requirements of Rule 56.").

> FN10. Plaintiff submitted his two identical oppositions and a sur-reply to the instant motion not only in this action, but also in the now-consolidated action (No. 07-CV-4841). The

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

Court has considered all of plaintiff's submissions in both actions in deciding the instant motion.

### III. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to *Federal Rule of Civil Procedure 56(c)*, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c)*; *Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir.2010)*. The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir.2005)*. The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir.2004)*; *see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)* (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir.2002)* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)* (emphasis in original)). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson, 477 U.S. at 249-50, 106 S.Ct. 2505* (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id. at 247-48, 106 S.Ct. 2505* (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed.

*R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir.1984)* (quoting *SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978)*). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " *BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir.1996)* (quoting *Research Automation Corp., 585 F.2d at 33*).

[4][5] Where the plaintiff is proceeding *pro se*, the Court must "construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s]." *Weixel v. Bd. of Educ. of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir.2002)* (alterations in original) (quoting *Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.2000)*). Though a *pro se* litigant's pleadings and other submissions are afforded wide latitude, a *pro se* party's conclusory assertions, completely unsupported **\*353** by evidence, are not sufficient to defeat a motion for summary judgment. *Shah v. Kuwait Airways Corp., 653 F.Supp.2d 499, 502 (S.D.N.Y.2009)* ("Even a *pro se* party, however, 'may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful.' " (quoting *Auguste v. N.Y. Presbyterian Med. Ctr., 593 F.Supp.2d 659, 663 (S.D.N.Y.2009)*)).

### IV. DISCUSSION

[6] To prevail on a claim under *Section 1983*, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. *42 U.S.C. § 1983*. "*Section 1983* itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James, 13 F.3d 515, 519 (2d Cir.1993)*.

There is no dispute for purposes of this motion that defendants were acting under color of state law. The question presented, therefore, is whether defendants' alleged conduct deprived plaintiff of his Eighth Amendment rights. Plaintiff alleges that his Eighth Amendment rights were violated when defendants: (1) prescribed him an incorrect dosage of medication for his renal disease; (2) failed to get him tested for the kidney

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

transplant list; and (3) failed to adequately treat him for his shoulder pain. For the reasons set forth below, after drawing all reasonable inferences from the facts in favor of plaintiff, the Court concludes that defendants are entitled to summary judgment on plaintiff's claim regarding the dosage of his medication and on all of plaintiff's claims against Sheriff Reilly. Defendants' motion for summary judgment is denied in all other respects.

### A. Exhaustion

As a threshold matter, defendants argue that plaintiff is barred from raising any Eighth Amendment claim with respect to his kidney transplant request because plaintiff has not exhausted his administrative remedies.FN11 For the reasons set forth below, the Court disagrees and cannot conclude from this record that plaintiff failed to exhaust his administrative remedies.

> FN11. Defendants raise exhaustion only with respect to plaintiff's kidney transplant request, and so the Court does not consider exhaustion with respect to plaintiff's other claims.

### 1. Legal Standard

The Prison Litigation Reform Act of 1995 ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." Espinal v. Goord, 558 F.3d 119, 124 (2d Cir.2009) (quoting Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90, 126 S.Ct. 2378, 165 L.Ed.2d 368

(2006). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *354Espinal, 558 F.3d at 124 (citing Jones v. Bock, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) and Woodford, 548 U.S. at 88-90, 126 S.Ct. 2378).

Prior to Woodford, 548 U.S. 81, 126 S.Ct. 2378 (2006), the Second Circuit "recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance." Reynoso v. Swezey, 238 Fed.Appx. 660, 662 (2d Cir.2007) (internal citations omitted); see also Davis v. New York, 311 Fed.Appx. 397, 399 (2d Cir.2009) (citing Hemphill v. New York, 380 F.3d 680, 686, 691 (2d Cir.2004)). However, the Second Circuit has not decided whether the above-discussed considerations apply post- Woodford. See, e.g., Reynoso, 238 Fed.Appx. at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether Woodford has a bearing on them."); Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d Cir.2006) ("We need not determine what effect Woodford has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre- Woodford case law.").

As the Supreme Court has held, exhaustion is an affirmative defense: "We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); see also Key v. Toussaint, 660 F.Supp.2d 518, 523 (S.D.N.Y.2009) ("Failure to exhaust remedies under the PLRA is an affirmative defense, and thus the defendants have the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

### 2. Application

Defendants argue that plaintiff did not appeal the resolution of his grievance request, i.e., the memo from Edwards dated October 5, 2007, stating that: "If you are in need of a 'test', documentation must be provided by the attending physician that is responsible for your renal treatment." (Defs.' Ex. F.) Therefore, defendants argue, plaintiff has failed to exhaust his administrative remedies under the PLRA. (Defs.' Br. at 25.) Plaintiff argues in response that he did not believe any further action on his grievance was "necessary" because the matter was put into the hands of the medical department. (Pl.'s Opp. at 3.) For the reasons discussed below, the Court concludes that, on this record, defendants have not met their burden of proving that plaintiff failed to exhaust his administrative remedies.

[7][8][9] As discussed above, the PLRA requires exhaustion only with respect to "such administrative remedies as are available." See 42 U.S.C. § 1997e(a). Therefore, in order to determine whether plaintiff exhausted his administrative remedies, the Court "must first establish from a legally sufficient source that an administrative remedy is applicable and that the particular complaint does not fall within an exception. Courts should be careful to look at the applicable set of grievance procedures,*355 whether city, state or federal." Mojias v. Johnson, 351 F.3d 606, 610 (2d Cir.2003); see also Espinal, 558 F.3d at 124 (holding that, when considering exhaustion, courts must "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures" (citations omitted)). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They are, or inevitably contain, questions of law." See Snider v. Melindez, 199 F.3d 108, 113-14 (2d Cir.1999). However, "the existence of the procedure may be a matter of fact." Id. at 114.

On the record before the Court on this motion, the Court

is unable to establish from any legally sufficient source that an administrative remedy was available to plaintiff. Defendants have made no submissions to the Court regarding the applicable grievance procedures at the NCCC. See, e.g., Abney v. County of Nassau, 237 F.Supp.2d 278, 281 (E.D.N.Y.2002) (noting that the "Inmate Handbook" for the Nassau County Correctional Facility procedure was "annexed to Defendants' moving papers"). Specifically, defendants have not submitted any evidence, by affidavit or otherwise, that NCCC procedures offer a remedy to address the particular situation in this case.FN12 Therefore, the Court cannot conclude from this record that plaintiff had an available administrative remedy that he failed to exhaust.

FN12. The Court notes that the October 5, 2007 memo from Edwards is unclear as to which party bore the responsibility of obtaining plaintiff's medical records. (Defs.' Ex. F.) Edwards explains in an affidavit that she advised plaintiff that "it would be necessary for his doctors to provide the selected facility with his records before a request for testing would be considered." (Edwards Aff. ¶ 2.) It is unclear whether plaintiff had access to these records or whether the prison would need to obtain them. Thus, there appears to be a factual question as to the implementation of this grievance resolution. A similar situation arose in Abney v. McGinnis, 380 F.3d 663 (2d Cir.2004), in which the Second Circuit held that where a prisoner achieved favorable results in several grievance proceedings but alleged that prison officials failed to implement those decisions, that prisoner was without an administrative remedy and therefore had exhausted his claim for purposes of the PLRA. See id. at 667-68, 669 ("Where, as here, prison regulations do not provide a viable mechanism for appealing implementation failures, prisoners in [plaintiff's] situation have fully exhausted their available remedies."). The Court recognizes that Abney, 380 F.3d 663, was decided before Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), and that, as discussed above, the Second Circuit has not decided whether the various nuances to the exhaustion requirement apply post- Woodford. However, the Court need not decide the applicability of any such nuances to the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

exhaustion requirement because, as discussed above, defendants have failed to establish the procedural framework for grievance resolution at the NCCC and the availability of *any* administrative remedies.

Although there may be administrative remedies for such a situation under the New York Department of Corrections regulations, *see* 7 N.Y. Comp.Codes R. & Regs. tit. 7, § 701.5(c)(4) ("If a decision is not implemented within 45 days, the grievant may appeal to CORC citing lack of implementation as a mitigating circumstance."), it does not follow that the same procedure applies at the NCCC. *See, e.g., Abney v. County of Nassau,* 237 F.Supp.2d at 283 ("The flaw in Defendants' argument, however, is that the cases relied upon were all decided under the New York State administrative procedure-none were decided in the context of the procedure relied upon-the Nassau County Inmate Handbook procedure.").

B. Plaintiff's Claims of Deliberate Indifference

1. Legal Standard

"[D]eliberate indifference to serious medical needs of prisoners constitutes the **356** 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" and therefore "states a cause of action under § 1983." *Estelle v. Gamble,* 429 U.S. 97, 104-05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). As the Second Circuit has explained,

[t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

*Hayes v. N.Y. City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir.1996) (citations omitted). Within this framework, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. County of Orange,* 248 Fed.Appx. 232, 236 (2d Cir.2007). Thus, according to the Second Circuit,

[d]efendants may be held liable under § 1983 if they ... exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution. Deliberate indifference is found in the Eighth Amendment context when a prison supervisor knows of and disregards an excessive risk to inmate health or safety .... Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Ortiz v. Goord,* 276 Fed.Appx. 97, 98 (2d Cir.2008) (citations and quotation marks omitted); *see also Harrison v. Barkley,* 219 F.3d 132, 137 (2d Cir.2000) ("Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.' ") (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)); *Curry v. Kerik,* 163 F.Supp.2d 232, 237 (S.D.N.Y.2001) (" '[A]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' ") (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (internal quotation marks omitted)).

[10][11] In particular, the Second Circuit has set forth a two-part test for determining whether a prison official's actions or omissions rise to the level of deliberate indifference:

The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

**\*357** *Hayes,* 84 F.3d at 620 (internal citation omitted); *see also Phelps v. Kapnolas,* 308 F.3d 180, 185-86 (2d Cir.2002) (setting forth two-part deliberate indifference test).

In *Salahuddin v. Goord,* the Second Circuit set forth in detail the objective and subjective elements of a medical indifference claim. 467 F.3d 263 (2d Cir.2006). In particular, with respect to the first, objective element, the Second Circuit explained:

The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.

Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is

sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an inmate's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

467 F.3d at 279-80 (citations and quotation marks omitted); *see also Jones v. Westchester County Dep't of Corr. Medical Dep't,* 557 F.Supp.2d 408, 413-14 (S.D.N.Y.2008).

With respect to the second, subjective component, the Second Circuit further explained:

The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware **\*358** of a substantial risk that serious inmate harm will result. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. But recklessness

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.

*Salahuddin,* 467 F.3d at 280 (citations and quotation marks omitted); *see also Jones,* 557 F.Supp.2d at 414. The Supreme Court has stressed that

in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle v. Gamble,* 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (internal citations omitted); *see also Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) ("A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations omitted)); *Harrison v. Barkley,* 219 F.3d 132, 139 (2d Cir.2000) (a medical practitioner who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not evince the culpability necessary for deliberate indifference).

### 2. Application

Plaintiff alleges that defendants violated his Eighth Amendment rights by: (1) prescribing an incorrect dosage of his renal disease medication; (2) failing to have him tested for the kidney transplant list; and (3) failing to properly treat his shoulder pain. The Court considers each claim in turn and, for the reasons discussed below, concludes that defendants are entitled to summary

judgment on plaintiff's claim regarding his medication dosage and on all of plaintiff's claims against Sheriff Reilly. Defendants' motion is denied in all other respects.

#### a. Medication Dosage

Defendants concede that plaintiff's kidney condition is serious (Defs.' Br. at 21), but argue that the dosage of Renagel and PhosLo prescribed for plaintiff did not result in any injury. Defendants also argue that, even if the dosage was incorrect, it was at most "an error in medical judgment." Finally, defendants argue that plaintiff cannot show deliberate indifference because defendants continually tested plaintiff and twice changed the dosage of his medication depending on his phosphorous levels. (Defs.' Br. at 22.) For the reasons set forth below, the Court agrees and concludes that no rational jury could find that defendants acted with deliberate indifference with respect to the prescription **359** of medication for plaintiff's renal disease.

#### i. Objective Prong

[12][13][14] Plaintiff has failed to present any evidence that the allegedly incorrect medication dosage posed an objectively serious risk to plaintiff's health. As a threshold matter, the mere fact that plaintiff's underlying renal disease is a serious medical condition does not mean that the allegedly incorrect treatment for that condition poses an objectively serious health risk. *See Smith v. Carpenter,* 316 F.3d 178, 186-87 (2d Cir.2003) ("As we noted in *Chance [v. Armstrong,* 143 F.3d 698 (2d Cir.1998) ], it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant for Eighth Amendment purposes."). Furthermore, plaintiff has failed to produce any evidence that his medication dosage at the NCCC caused him any objectively serious harm. Instead, plaintiff testified merely that the prescribed dosage was "wrong" and was "hurting" him.[FN13] (Price Dep. at 60.) Plaintiff's belief that the medication dosage was incorrect is insufficient to establish the objective prong of the deliberate indifference test.[FN14] *See Fox v. Fischer,* 242 Fed.Appx. 759, 760 (2d Cir.2007) ("[T]he fact that [plaintiff] was provided Claritin as a substitute for Allegra

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

fails to establish deliberate indifference to a serious medical need, because there is no allegation that the change in medication caused harm, if any, sufficiently serious to establish the objective prong of a deliberate indifference claim...."); _Reyes v. Gardener,_ 93 Fed.Appx. 283, 285 (2d Cir.2004) ( "[Plaintiff] has offered no evidence ... showing that the prescribed medication regimen deviated from reasonable medical practice for the treatment of his condition."). Although there is evidence that plaintiff's phosphorous levels increased when he was prescribed a lesser dosage of medication upon arriving at the NCCC (_see_ Price Dep. **360** at 23-26), that is not by itself enough to support a finding of an objectively serious condition.[FN15] _See Smith,_ 316 F.3d at 188-89 ("Although [plaintiff] suffered from an admittedly serious underlying condition, he presented no evidence that the two alleged episodes of missed medication resulted in permanent or on-going harm to his health, nor did he present any evidence explaining why the absence of actual physical injury was not a relevant factor in assessing the severity of his medical need.") (affirming denial of motion for new trial). Thus, plaintiff's medication dosage claim must fail because he cannot show that the complained-of dosage posed an objectively serious health risk.[FN16]

> FN13. Plaintiff does not distinguish between the initial dosage he received at the NCCC and the later dosages he received, instead arguing generally that all of the dosages he received at the NCCC were incorrect.

> FN14. Plaintiff's conclusory testimony that the dosage was "hurting" him also is insufficient to establish the objective prong of the deliberate indifference test. To the extent plaintiff claims that the medication caused him pain, there is no evidence in the record that plaintiff suffered from chronic pain or, indeed, any other objectively serious symptoms in connection with the medication dosage. Although not mentioned in plaintiff's deposition or in his opposition to the instant motion, plaintiff alleges in his amended complaint that the lesser dosage put him at risk of "itching" and "breaking of bones." (Amended Complaint, No. 07-CV-2634, at 4.) There is evidence that plaintiff suffered from a rash and/or itching while at the NCCC and that plaintiff was told at one point that he had

eczema. (_See_ Price Dep. at 45-51.) However, there is no evidence to connect those symptoms with the medication dosage for his renal disease. (_See, e.g., id._ at 46 ("Q. Did anyone ever tell you what was causing a rash? A. I kept going to the-I had went to the dermatologist at Bellevue. To me, the doctor had an attitude like it ain't nothing wrong; like it was acne or something.").) Furthermore, there is no evidence that the rash and/or itching was an objectively serious condition. _See Lewal v. Wiley,_ 29 Fed.Appx. 26, 29 (2d Cir.2002) (affirming summary judgment and holding that plaintiff's alleged "persistent rash" was not a "serious medical condition"); _see also Benitez v. Ham,_ No. 04-CV-1159, 2009 WL 3486379, at *11 (N.D.N.Y. Oct. 21, 2009) ("[T]he evidence shows that Plaintiff suffered from a severe body itch. While this condition was undoubtedly unpleasant, it simply does not rise to the level of an Eighth Amendment violation."). In any event, even if plaintiff did suffer from an objectively serious condition because of the medication dosage, he cannot prove that defendants acted with a subjectively culpable state of mind, as discussed _infra._

> FN15. In any event, as discussed _infra,_ defendants adjusted plaintiff's dosage in response to the increase in phosphorous levels, and there is no evidence from which a rational jury could conclude that defendants acted with deliberate indifference in prescribing plaintiff's medication.

> FN16. Although he does not raise it in any of his pleadings or in his opposition to the instant motion, plaintiff testified at his deposition that he had to take the medication with meals but that sometimes he was given the medication without food or at times that interfered with his meals. (Price Dep. at 23, 60; Defs.' Ex. E.) The record is unclear as to how often this occurred. The Court assumes, as it must on this motion for summary judgment, that on some occasions plaintiff was given his medications not at meal times or at times that interfered with meals. However, plaintiff points to no evidence whatsoever of any harm caused by defendants' alleged conduct in this regard, and, therefore, no

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

rational jury could find that the provision of medication without food on some occasions was objectively serious. *See Gillard v. Kuykendall, 295 Fed.Appx. 102, 103 (8th Cir.2008)* (affirming summary judgment for defendants where defendants, on some occasions, "were late in giving [plaintiff] his medications and did not always administer them with meals as [plaintiff] apparently desired" where there was no evidence of any adverse consequences). Thus, any deliberate indifference claim based on these allegations would fail as well.

### ii. Subjective Prong

[15][16] Plaintiff's claim with respect to his medication dosage also fails because plaintiff cannot show that defendants acted with subjectively culpable intent, i.e., that they were aware of, and consciously disregarded, plaintiff's serious medical needs. Plaintiff's claim is based on his assertion that the prescribed dosage was "wrong." However, mere disagreement with a prescribed medication dosage is insufficient as a matter of law to establish the subjective prong of deliberate indifference. *See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998)* ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303, 312 (S.D.N.Y.2001)* ("[D]isagreements over medications ... are not adequate grounds for a Section 1983 claim. Those issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." (citing Estelle, 429 U.S. at 107, 97 S.Ct. 285)); *see also, e.g., Fuller v. Ranney, No. 06-CV-0033, 2010 WL 597952, at *11 (W.D.N.Y. Feb. 17, 2010)* ("Plaintiff's claim amounts to nothing more than a disagreement with the prescribed treatment he received and his insistence that he be prescribed certain medications. Without more, plaintiff's disagreement with the treatment he received does not rise to the level of a constitutional violation of his Eighth Amendment rights."); *Covington v. Westchester County Dep't of Corr., No. 06 Civ. 5369, 2010 WL 572125, at *6 (S.D.N.Y. Jan. 25, 2010)* ("[Plaintiff's] claims that Defendants failed **361 to change or increase his medication and counseling

sessions amount to negligence claims at most, which is insufficient."); *Hamm v. Hatcher, No. 05-CV-503, 2009 WL 1322357, at *8 (S.D.N.Y. May 5, 2009)* ("Plaintiff's unfulfilled demand for a larger dosage of [the medication] represents a mere disagreement over the course of Plaintiff's treatment and is inconsistent with deliberate indifference ....").

The fact that defendants adjusted the dosage of plaintiff's medication in response to plaintiff's phosphorous levels (*see* Price Dep. at 25-27) is also inconsistent with deliberate indifference. *See Bellotto v. County of Orange, 248 Fed.Appx. 232, 237 (2d Cir.2007)* ("The record also shows that mental health professionals responded to [plaintiff's] concerns about his medications and adjusted his prescription as they believed necessary.") (affirming summary judgment for defendants); *see also Jolly v. Knudsen, 205 F.3d 1094, 1097 (8th Cir.2000)* ("[Defendant's] actions in this case cannot reasonably be said to reflect deliberate indifference. The only relevant evidence in the record indicates that [defendant's] actions were aimed at correcting perceived difficulties in [plaintiff's] dosage levels [in response to blood tests]."); *Fuller, 2010 WL 597952, at *11* ("Moreover, a subsequent decision to prescribe plaintiff a certain medication does not indicate that the medication should have been prescribed earlier.").[FN17] Thus, there is no evidence in the record sufficient for a rational jury to find that defendants acted with deliberate indifference regarding the prescription dosage of plaintiff's renal disease medication.

FN17. To the extent plaintiff also argues that that defendants acted with deliberate indifference because he has received different prescriptions at different facilities, the Court rejects that argument as well. *See, e.g., Cole v. Goord, No. 04 Civ. 8906, 2009 WL 1181295, at *8 n. 9 (S.D.N.Y. Apr. 30, 2009)* ("[Plaintiff's] reliance upon the fact that subsequent medical providers have provided him with a different course of medication or treatment ... does nothing to establish that [defendant] violated [plaintiff's] Eighth Amendment rights. Physicians can and do differ as to their determination of the appropriate treatment for a particular patient; that difference in opinion does not satisfy the requirements for a constitutional claim of deliberate indifference."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

(citing *Estelle,* 429 U.S. at 97, 97 S.Ct. 285)).

In sum, based on the undisputed facts and drawing all reasonable inferences in plaintiff's favor, no rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's objectively serious health needs regarding his medication dosage. Accordingly, defendants' motion for summary judgment is granted with respect to this claim.

### b. Kidney Transplant

[17] Defendants also argue that plaintiff cannot proceed with his deliberate indifference claim regarding his request to be tested for a kidney transplant. Defendants do not dispute the objective seriousness of plaintiff's underlying condition or the requested transplant, and instead argue only that defendants lacked subjective culpability. Specifically, defendants argue that they made reasonable efforts to get plaintiff tested. (Defs.' Br. at 23.) However, construing the facts in the light most favorable to plaintiff, a rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's serious medical needs.

Plaintiff began requesting a kidney transplant test as early as February or March 2007 and still had not received one by the time he left the NCCC in December 2007. (*See* Price Dep. at 76-77, 90.) Requests were sent on plaintiff's behalf to Dr. Okonta at the Nassau University Medical Center and to Nurse Mary Sullivan at the NCCC medical department. (*See* Defs.' Ex. K.) The record indicates that plaintiff received no response from Okonta. (*See* Price Dep. at 82.) When plaintiff asked Sullivan about the test, Sullivan told him that defendants had "other priorities right now." (Price Dep. at 70.) Even after plaintiff filed a formal grievance in September 2007, he still did not receive the requested test. (*See* Defs.' Ex. F.) On these facts, where there was a delay of at least nine months in arranging a kidney transplant test for plaintiff despite plaintiff's repeated requests, and where defendants do not dispute the necessity of the test, a rational jury could find that defendants acted with deliberate indifference to plaintiff's serious medical needs. *See Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000) (holding summary judgment inappropriate where there

was evidence that, *inter alia,* plaintiff was delayed dental treatment for a cavity for one year); *Hathaway v. Coughlin,* 841 F.2d 48, 50-51 (2d Cir.1988) ("[Plaintiff's] affidavit in opposition to [defendants'] motion for summary judgment alleged that a delay of over two years in arranging surgery ... amounted to deliberate indifference to his serious medical needs. We believe this is a sufficient allegation to survive a motion for summary judgment under *Archer* [*v. Dutcher,* 733 F.2d 14 (2d Cir.1984) ] because it raises a factual dispute ...."); *see also Lloyd v. Lee,* 570 F.Supp.2d 556, 569 (S.D.N.Y.2008) ("A reasonable jury could infer deliberate indifference from the failure of the doctors to take further steps to see that [plaintiff] was given an MRI. The argument that the doctors here did not take [plaintiff's] condition seriously is plausible, given the length of the delays. Nine months went by after the MRI was first requested before the MRI was actually taken.").

Defendants point to evidence in the record that they were, in fact, attempting to get plaintiff tested throughout the time in question, but were unsuccessful in their efforts. (*See* Defs.' Br. at 23; Reschke Aff. ¶ 3.) However, defendants' proffered explanation for the delay, i.e., the difficulty of finding a hospital because of transportation and security concerns, raises questions of fact and does not, as a matter of law, absolve them of liability. *See Johnson v. Bowers,* 884 F.2d 1053, 1056 (8th Cir.1989) ("It is no excuse for [defendants] to urge that the responsibility for delay in surgery rests with [the hospital]."); *Williams v. Scully,* 552 F.Supp. 431, 432 (S.D.N.Y.1982) (denying summary judgment where plaintiff "was unable to obtain treatment ... for five and one half months, during which time he suffered considerable pain" despite defendants' "explanations for the inadequacy of [the prison's] dental program"), *cited approvingly in Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000). Thus, whether defendants' efforts were reasonable over the nine month period at issue is a question of fact for the jury.

In sum, on this record, drawing all reasonable inferences in plaintiff's favor, the Court concludes that a rational jury could find that defendants acted with deliberate indifference regarding plaintiff's request for a kidney transplant test. Accordingly, defendants' motion for summary judgment on this claim is denied.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

c. Shoulder

Defendants argue that summary judgment is warranted on the claim relating to the alleged shoulder injury because plaintiff's complained-of shoulder pain was not objectively serious and plaintiff has failed to show subjectively culpable intent by defendants. For the reasons set forth below, the Court disagrees and concludes that a rational jury could find that defendants acted with deliberate indifference **363** regarding plaintiff's shoulder pain. Thus, summary judgment on this claim is denied.

i. Objective Prong

[18][19] Defendants argue that plaintiff cannot satisfy the objective element of the deliberate indifference test regarding his shoulder because plaintiff alleges only that he had pain in his shoulder and not that he had "a condition of urgency, one that might produce death, deterioration or extreme pain." (Defs'. Br. at 22.) However, plaintiff did complain to the medical department that his right shoulder was "extremely hurting." (Defs.' Ex. E, Sick Call Request, Jan. 17, 2007.) Furthermore, plaintiff states that he now has a separated shoulder and wears a brace for carpal tunnel syndrome. (Pl.'s Opp. at 4.) In any event, chronic pain can be a serious medical condition. See *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003) ("We will no more tolerate prison officials' deliberate indifference to the chronic pain of an inmate than we would a sentence that required the inmate to submit to such pain. We do not, therefore, require an inmate to demonstrate that he or she experiences pain that is at the limit of human ability to bear, nor do we require a showing that his or her condition will degenerate into a life-threatening one."); *Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir.1994); *see also Sereika v. Patel,* 411 F.Supp.2d 397, 406 (S.D.N.Y.2006) ( "[Plaintiff's] allegation that he experienced severe pain as a result of the alleged delay in treatment, together with his allegation that the alleged delay in treatment resulted in reduced mobility in his arm and shoulder, raise issues of fact as to whether his shoulder injury constitutes a sufficiently serious medical condition to satisfy the objective prong of the deliberate indifference standard.") (denying summary judgment). Thus, the Court cannot conclude at the summary judgment stage that plaintiff did not suffer from a serious medical condition.

ii. Subjective Prong

Defendants also argue that plaintiff cannot meet the subjective prong of the deliberate indifference test because plaintiff was seen repeatedly by the medical department and was given pain medication. (Defs.' Br. at 22.) Defendants also point to the fact that when x-rays were ultimately taken, they were negative.[FN18] However, construing the facts most favorably to plaintiff, a rational jury could find that defendants were aware of, and consciously disregarded, plaintiff's serious medical needs. Plaintiff repeatedly complained to defendants over a period of several months, beginning in January 2007, about the pain in his shoulder (*see* Defs.' Ex. E), and further complained that the pain medication he was being given was ineffective.[FN19] (*See, e.g.,* Price Dep. at 45, 51.) In June 2007, for instance, plaintiff was still complaining that his right shoulder "hurts really bad," and that he had been "complaining of that for months." (Def.'s Ex. E, Sick Call Requests, June 12 and June 17, 2007.) Thus, it is uncontroverted that defendants were aware of plaintiff's alleged chronic shoulder pain.

FN18. The November 2007 x-ray records indicate that "short segment acute thrombosis cannot be reliably excluded, Ultrasound might provide additional information ...." (*See* Defs.' Ex. J, Discharge Summary, November 2007.) Defendants point to no evidence in the record that they followed up on that x-ray report.

FN19. Plaintiff also informed defendants that he had been given a Cortisone shot for his shoulder at his previous place of incarceration. (*See* Price Dep. at 38, 53-54; Defs.' Ex. E, Sick Call Request, Apr. 14, 2007.)

Despite plaintiff's complaints, however, plaintiff was not given an x-ray exam for several months (Price Dep. at 44; Def.'s **364** Ex. J), and was not given any pain medication besides Motrin and Naprosyn. (Price Dep. at 55.) Although defendants argue that the treatment for plaintiff's shoulder pain was reasonable under the circumstances, there are factual questions in this case that preclude

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

summary judgment. *See Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) ("Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.") (reversing grant of motion to dismiss). Drawing all reasonable inferences from the facts in favor of plaintiff, a rational jury could find that defendants acted with deliberate indifference by not changing plaintiff's pain medication despite his continued complaints that it was ineffective, by failing to take x-rays for several months, and by failing to follow-up on a November 2007 x-ray report indicating that further tests might be needed (*see* Defs.' Ex. J, Discharge Summary, November 2007). *See Brock,* 315 F.3d at 167 ("It is not controverted that [defendant] was aware that [plaintiff] was suffering some pain from his scar. The defendants sought to cast doubt on the truthfulness of [plaintiff's] claims about the extent of the pain he was suffering and, also, to put into question DOCS' awareness of [plaintiff's] condition. But at most, defendants' arguments and evidence to these effects raise issues for a jury and do not justify summary judgment for them."); *Hathaway,* 37 F.3d at 68-69 (holding that, *inter alia,* two-year delay in surgery despite plaintiff's repeated complaints of pain could support finding of deliberate indifference). The fact that defendants offered some treatment in response to plaintiff's complaints does not as a matter of law establish that they had no subjectively culpable intent. *See Archer v. Dutcher,* 733 F.2d 14, 16 (2d Cir.1984) ("[Plaintiff] received extensive medical attention, and the records maintained by the prison officials and hospital do substantiate the conclusion that [defendants] provided [plaintiff] with comprehensive, if not doting, health care. Nonetheless, [plaintiff's] affidavit in opposition to the motion for summary judgment does raise material factual disputes, irrespective of their likely resolution.... [Plaintiff's] assertions ... do raise material factual issues. After all, if defendants did decide to delay emergency medical-aid-even for 'only' five hours-in order to make [plaintiff] suffer, surely a claim would be stated under *Estelle.*"). Specifically, given the factual disputes in this case, the Court cannot conclude as a matter of law that defendants did not act with deliberate indifference when they allegedly declined to change their treatment for plaintiff's shoulder pain despite repeated complaints over several months that the pain persisted. *See, e.g., Lloyd,* 570 F.Supp.2d at 569 ("[T]he amended complaint plausibly alleges that doctors knew that [plaintiff] was experiencing extreme pain and loss of mobility, knew that the course of treatment they prescribed was ineffective, and declined to do anything to attempt to improve

[plaintiff's] situation besides re-submitting MRI request forms.... Had the doctors followed up on numerous requests for an MRI, the injury would have been discovered earlier, and some of the serious pain and discomfort that [plaintiff] experienced for more than a year could have been averted."). Thus, there are factual disputes that prevent summary judgment on defendants' subjective intent.

In sum, on this record, drawing all reasonable inferences from the facts in favor of plaintiff, a rational jury could find that defendants acted with deliberate indifference to plaintiff's shoulder pain. Accordingly, defendants' motion for summary judgment on this claim is denied.

**\*365** C. Individual Defendants

Defendants also move for summary judgment specifically with respect to plaintiff's claims against three of the individual defendants: Sheriff Edward Reilly (hereinafter "Reilly"), Edwards, and Okonta. For the reasons set forth below, the Court grants defendants' motion with respect to Reilly, and denies it with respect to Edwards and Okonta.

1. Legal Standard

[20] "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (citation and quotation marks omitted). In other words, "supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." *Id.* Supervisor liability can be shown in one or more of the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Id.* at 145 (citation omitted).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

697 F.Supp.2d 344
(Cite as: 697 F.Supp.2d 344)

2. Application

[21] Although plaintiff alleges in the complaint that Reilly was aware of plaintiff's condition and failed to assist,[FN20] there is no mention whatsoever of Reilly in plaintiff's deposition or in any of the parties' evidentiary submissions. Because there is no evidence in the record that Reilly was personally involved in any of the alleged constitutional violations or that there was a custom or policy of allowing such constitutional violations (and that Reilly allowed such custom or policy to continue), no rational jury could find Reilly liable for any of plaintiff's deliberate indifference claims. *See Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."); *see also Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438-39 (E.D.N.Y.2009) ("[T]he plaintiff cannot establish that Sheriff Reilly was grossly negligent in failing to supervise subordinates because the medical care of inmates at the NCCC was delegated to the Nassau Health Care Corporation and plaintiff provides no evidence that Reilly was otherwise personally involved in his treatment."). Therefore, defendants' motion for summary judgment with respect to plaintiff's claims against Sheriff Reilly is granted.

> FN20. Plaintiff actually refers in the complaint to "Sheriff Edwards," but the Court determines, liberally construing the complaint, that this allegation refers to Sheriff Reilly.

[22] With respect to plaintiff's claims against Edwards and Okonta, however, there are disputed issues of fact that preclude summary judgment. Defendants argue that Edwards was not personally involved in the alleged constitutional violations because she did not treat plaintiff and merely responded to his grievance request. (Defs.' Br. at 24-25.) However, plaintiff testified that, although Edwards never physically treated him, she "takes care of appointments and makes sure you get to certain specialists" and that "she was in a position to make sure that I get the adequate care that I needed." (Price Dep. at 61-62.) Plaintiff also testified that he submitted a grievance request to *366 Edwards in order to be tested for the kidney transplant list, but that Edwards failed to get him on the list. (Price Dep. at 62-63.) Drawing all

reasonable inferences in favor of plaintiff, a rational jury could find that Edwards was personally involved in the alleged constitutional violations because she was in a position to get plaintiff tested for the kidney transplant list and failed to do so. *See McKenna v. Wright,* 386 F.3d 432, 437-38 (2d Cir.2004) ("Although it is questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of, [defendant] was properly retained in the lawsuit at this stage, not simply because he rejected the grievance, but because he is alleged, as Deputy Superintendent for Administration at [the prison], to have been responsible for the prison's medical program." (citation omitted)). Thus, plaintiff has presented sufficient evidence of Edwards's personal involvement in the alleged constitutional violations to raise a genuine issue of material fact as to whether Edwards is liable for the alleged Eighth Amendment violations.

[23][24] Defendants also argue that Okonta was not personally involved in the alleged constitutional violations because he did not actually treat plaintiff. (Defs.' Br. at 24-25.) This argument misses the mark. It is plaintiff's allegation that Okonta violated plaintiff's constitutional rights precisely by not treating him. Plaintiff has presented evidence that he received no response from Okonta regarding his requests to be tested for the kidney transplant list. Where a prison doctor denies medical treatment to an inmate, that doctor is personally involved in the alleged constitutional violation. *See McKenna,* 386 F.3d at 437 (finding "personal involvement" where medical defendants were alleged to have participated in the denial of treatment); *see also Chambers v. Wright,* No. 05 Civ. 9915, 2007 WL 4462181, at *3 (S.D.N.Y. Dec. 19, 2007) ("Prison doctors who have denied medical treatment to an inmate are 'personally involved' for the purposes of jurisdiction under § 1983." (citing *McKenna,* 386 F.3d at 437)). Although defendants argue that they were in fact making efforts to get plaintiff tested (Defs.' Br. at 25), the reasonableness of those efforts, as discussed above, is a factual question inappropriate for resolution on summary judgment.

In sum, defendants' motion for summary judgment on plaintiff's claims against Reilly is granted. Defendants' motion with respect to Edwards and Okonta is denied.

697 F.Supp.2d 344
 (Cite as: 697 F.Supp.2d 344)

## V. CONCLUSION

For the foregoing reasons, the Court grants in part and
denies in part defendants' motion for summary judgment.
Specifically, the Court grants defendants' motion with
respect to plaintiff's claim regarding the dosage of his
renal disease medication and with respect to all of
plaintiff's claims against Sheriff Reilly. Defendants'
motion is denied in all other respects. The parties to this
action shall participate in a telephone conference on
Monday, April 5, 2010 at 3:30 p.m. At that time, counsel
for defendants shall initiate the call and, with all parties on
the line, contact Chambers at (631) 712-5670.

SO ORDERED.

E.D.N.Y.,2010.
Price v. Reilly
697 F.Supp.2d 344

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Page 1

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. Id. at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. Id. at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. Id. at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. Id. at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. Id. at ¶¶ 22, 27-28.

II. Motion to Dismiss

*2 When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from those facts in favor of the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Staron v. McDonald's Corp., 51 F.3d 353, 355 (2d Cir.1995) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

III. Discussion

A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); Rhodes v. Chapman, 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. Farmer, 511 U.S. at 837.

1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes,* 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,* 524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware that* there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Randolph R. SCOTT, Sr., Plaintiff,
v.
Angelo A. DELSIGNORE, Chief Ct. Clerk, Thomas A. Beilein, Sheriff & Medical Dept. of Jail, Niag. Co. Jail, Claude Jeorge, County Attorney, and Tim Blackley, Deputy Sheriff, Defendants.
No. 02-CV-029F.

Feb. 18, 2005.
Randolph R. Scott, Sr., USP Allenwood, White Deer, Pennsylvania, pro se.

Webster Szanyi, LLP, Charles E. Graney, Buffalo, New York, for Defendant Beilein, of counsel.

DECISION and ORDER

FOSCHIO, Magistrate J.

*JURISDICTION*

**\*1** The parties to this action consented to proceed before the undersigned on May 31, 2002. The matter is presently before the court on Plaintiff's motion for summary judgment (Doc. No. 63), filed on February 20, 2004, Plaintiff's supplemental motion for summary judgment (Doc. No. 64), filed on February 27, 2004, and Defendant Beilein's crossmotion for summary judgment (Doc. No. 72), filed on April 16, 2004.

*BACKGROUND*

Plaintiff, Randolph R. Scott, Sr., proceeding *pro se,* commenced this civil rights action pursuant to 42 U.S.C. § 1983 on January 11, 2002, alleging Defendants, Niagara County Court Chief Clerk Angelo A. DelSignore, Niagara County Sheriff Thomas A. Beilein, Niagara County Attorney Claude Jeorg, [FN1] and Niagara County Sheriff Deputies Tim Blackley and Sergeant Stickney (collectively referred to as "Defendants"), violated Plaintiff's constitutional rights under the Fourth, Fifth, Sixth, Eighth, Thirteenth and Fourteenth Amendments by denying Plaintiff access to his asthma medication while in custody. Pursuant to a Decision and Order by District Judge David G. Larimer, filed on February 12, 2002 (Doc. No. 5) ("February 12, 2002 Decision and Order"), all claims were dismissed as against all Defendants except for the Eighth Amendment deliberate indifference claim which was permitted to proceed as against Defendant Sheriff Beilein.

> FN1. The court uses the correct spelling of Niagara County Attorney Jeorg's name.

On February 20, 2004, Plaintiff filed a motion for summary judgment seeking summary judgment on Plaintiff's deliberate indifference claim. A Memorandum of Law in support is attached to the motion (Doc. No. 63) ("Plaintiff's Memorandum"). On February 27, 2004, Plaintiff filed a supplemental motion for summary judgment seeking summary judgment on the issue of whether Plaintiff exhausted available administrative remedies regarding his deliberate indifference claim. Plaintiff filed in support of the supplemental motion an attached Memorandum of Law and exhibits (Doc. No. 64) ("Plaintiff's Supplemental Memorandum"), and an affidavit (Doc. No. 65) ("Plaintiff's Affidavit").

On April 16, 2004, Defendant filed a crossmotion for summary judgment (Doc. No. 72), supported by the attached Declaration of Frank V. Balon, Esq. ("Balon Declaration"),[FN2] a Memorandum of Law (Doc. No. 73) ("Defendant's Memorandum"), and a Statement of facts Pursuant to Federal Rules of Civil Procedure, Local Rule 56 (Doc. No. 74) ("Defendant's Fact Statement"). On April 28, 2004, Plaintiff filed in response to Defendants' crossmotion for summary judgment an affidavit (Doc. No. 77) ("Plaintiff's Response Affidavit"). On May 13, 2004, Defendants filed in further support of their crossmotion for summary judgment a Reply Memorandum of Law (Doc. No. 79) ("Defendants' Reply Memorandum"). On May 28, 2004, Plaintiff filed a Response in opposition to Defendants' Reply Memorandum (Doc. No. 80) ("Plaintiff's Reply"). Oral argument was deemed

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

unnecessary.

FN2. On April 19, 2004, Defendants filed an exact duplicate of the Balon Declaration (Doc. No. 75), but without the exhibits attached to the first filing.

Based on the following, Plaintiff's motion for summary judgment (Doc. No. 63) and supplement motion for summary judgment (Doc. No. 64) are DENIED; Defendants' crossmotion for summary judgment (Doc. No. 72) is GRANTED.

*FACTS* FN3

FN3. Taken from the pleadings and motion papers filed in this action.

**\*2** On February 8, 2001, Plaintiff, Randolph R. Scott, Sr. ("Scott"), while serving a two-month term of incarceration in Niagara County Jail ("the county jail"), was transported to the Niagara Falls City Jail ("the city jail"), for an overnight stay in order to appear in court the following morning. Scott made several requests for permission to bring his asthma medication with him to the city jail, but the requests were denied because of a county jail policy prohibited county jail inmates from possessing medication. Defendant Niagara County Sheriff Thomas A. Beilein ("Sheriff Beilein") is responsible for county jail policies.

In the evening of February 8, 2001, while held in the city jail, Scott suffered an asthma attack and, as he did not have his medication, Scott had to be taken in an ambulance for emergency treatment at Niagara Falls Memorial Medical Center ("the hospital"), where Scott was treated with an "inhaled bronchodilator", also referred to as an asthma inhaler, to improve his breathing. Scott, who was discharged from the hospital less than an hour after his arrival, had the asthma inhaler with him upon returning to the city jail where Defendant Niagara County Sheriff Deputy Tim Blackley took the asthma inhaler, threw it on the floor and broke it. Scott, who is indigent, was billed for both the ambulance ride and his treatment at the hospital, despite the fact that neither would have been necessary had Scott been permitted to bring his

asthma medication with him on the overnight trip to the city jail.

On February 9, 2001, Scott filed an administrative complaint with the county jail regarding the denial of his requests to bring his asthma medication with him to the city jail. According to Scott, about a week after filing the administrative complaint, county jail officers Captain Fictingner and Sergeant Giles interviewed Scott regarding the incident and further investigation was ordered. Two weeks after the interview, Scott wrote Captain Fictingner and Sergeant Giles, inquiring about the investigation. The following week, Scott received a reply advising the matter was still under investigation. After another two weeks passed without any resolution of or further communication regarding the matter, Scott filed a complaint against Captain Fictingner and county jail administration for failure to timely investigate the matter and requested a grievance form.

County jail grievance coordinator Sergeant Dress responded to the new complaint against Captain Fictingner and county jail administration, and Scott was given a grievance form. Scott submitted the grievance form within a few days of receiving it, but, as Scott was released from the county jail shortly thereafter, Scott did not further pursue the grievance. Scott was later reincarcerated in the county jail and is currently incarcerated, presumably on an unrelated federal conviction, at United States Penitentiary Allenwood ("USP Allenwood") in White Deer, Pennsylvania. FN4

FN4. The record does not indicate when Scott was readmitted to the county jail, how long Scott remained in the county jail upon being reincarcerated there, or when Scott was incarcerated at USP Allenwood. However, the absence of such information will not prevent a disposition on the merits of the instant motions.

*DISCUSSION*

**\*3** Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The court is required to construe the evidence in the light most favorable to the non-moving party. *Tenenbaum v. Williams,* 193 F.3d 58, 593 (2d Cir.1999) (citing *Anderson, supra,* at 255). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment. *Celotex, supra,* at 322; *see Anderson, supra,* at 247-48 ("summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). In assessing a record to determine whether there is genuine issue of material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.' Such a motion, whether or not accompanied by affidavits, will be 'made and supported as provided in this rule [FRCP 56],' and Rule 56(e) therefore requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex, supra,* at 323-24 (1986) (quoting Fed.R.Civ.P. 56). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the non-moving party's case." *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 742 (2d Cir.1998).

Both Scott and Defendants seek summary judgment as to whether Scott exhausted administrative remedies in connection with the grievance filed with the county jail, as well as the merits of Scott's challenge to the county jail policy upon which Defendants relied in denying Scott

permission to bring his asthma medication to the city jail. Defendants maintain the Scott has failed to exhaust his administrative remedies and that, in any event, Scott has failed to establish any triable issue of fact which, if decided in Scott's favor, would permit Scott to recover for an Eighth Amendment violation based on the denial of his asthma medication. Scott maintains that he sufficiently exhausted his administrative remedies to the extent possible given his release from the county jail soon after filing his grievance, and that the record establishes a violation of his Eighth Amendment rights.

*1. Exhaustion of Administrative Remedies*

**\*4** Defendants, who do not dispute that Scott filed a grievance with the county jail, maintain that they are entitled to summary judgment because Scott has admitted that he did not exhaust his administrative remedies. Defendants' Memorandum at 3; Defendants' Reply Memorandum at 3-4. Scott argues in opposition that he exhausted his administrative as much as possible until he was released from the county jail, including the filing of a complaint and a formal grievance with the county jail administrators and participating in the ensuing investigation. Plaintiff's Supplemental Memorandum at 1; Plaintiff's Affidavit ¶¶ 1, 3-4, 11, 13-15.

The Prison Litigation Reform Act of 1995 ("the PLRA"), 110 Stat. 1321 (1996), codified at 42 U.S.C. § 1997e, provides that

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

This mandatory administrative exhaustion requirement applies to all civil actions with respect to prison conditions and individual instances of prison misconduct. *Webb v. Goord,* 340 F.3d 105, 112 (2d Cir.2003). A "civil action with respect to prison conditions" is defined under the PLRA as

any civil proceeding arising under Federal law with

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison, but does not include habeas corpus proceedings challenging the fact or duration of confinement in prison.

18 U.S.C. § 3626(g)(2)(emphasis added).

Based on the language of the PLRA, Scott's federal civil rights claims, alleging deliberate indifference to his serious medical needs, fall within this definition and, as such, the PLRA's exhaustion requirement applies. *See Richardson v. Goord,* 347 F.3d 431, 433-34 (2d Cir.2003) (remanding to district court for determination as to whether inmate plaintiff exhausted administrative remedies regarding claim that defendants acted with deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment).

Exhaustion of administrative remedies is an affirmative defense, rather than a jurisdictional requirement. *Johnson v. Testman,* 380 F.3d 691, 695 (2d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004). As such, a defendant must either raise a plaintiff's failure to exhaust as an affirmative defense, or the defense is waived. *Johnson, supra,* at 695. Further, as the failure to exhaust is an affirmative defense, it is the defendant's burden to establish that the plaintiff failed to exhaust and, in certain circumstances, a defendant's own actions may preclude the defendant from asserting failure to exhaust as a defense. *Giano, supra,* at 675. Accordingly, here, it is Defendants' burden to establish that Scott failed to exhaust administrative remedies.

**\*5** Although exhaustion is generally mandatory, in "certain situations," including where administrative remedies are not " 'available' to prisoners seeking redress of their grievances," the plaintiff's failure to exhaust is justified. *Giano, supra,* (citing 42 U.S.C. § 1997e(a)). As such, Defendants, to meet their burden of proof on the asserted failure to exhaust defense, are required to establish that administrative remedies were available, but that Scott failed to exhaust the remedies. In attempting to meet their burden, Defendants rely on the fact that Scott admitted in papers submitted in connection with the instant summary judgment motions that Scott failed to

exhaust his administrative remedies because county jail officials interfered with Scott's attempts to pursue such remedies, and further maintain that Scott has submitted no evidence that he ever attempted to pursue any administrative remedies relative to his claims. Defendants' Memorandum at 3 (citing Plaintiff's Affidavit). Defendants also rely in support of summary judgment on the affirmative defense of exhaustion that Scott attributed his failure to administratively exhaust the instant claims to the fact that Scott was released from incarceration at the county jail prior to the resolution of his administrative grievance. Defendants' Reply Memorandum at 3-4 (citing Plaintiff's Affidavit and Plaintiff's Response Affidavit).

Defendants' bald assertion that Scott has failed to present any evidence that he ever attempted to exhaust administrative remedies, Defendants' Memorandum at 3, is, without more, insufficient to satisfy Defendants' burden of proof on their affirmative defense. *See Black v. Coughlin,* 76 F.3d 72, (2d Cir.1996) (holding it is defendant's burden in § 1983 action to prove, either at trial or on summary judgment, affirmative defense of qualified immunity and plaintiff was not required to show absence of such defense). Significantly, Defendants have not submitted anything substantiating their assertion that Scott may not have filed any complaint or grievance regarding the denial of Scott's request to bring asthma medication with him to the city jail, such as a log showing the absence of any such claim being filed while Scott remained incarcerated at the county jail, or an affidavit from the county jail's Inmate Grievance Program ("IGP") indicating that Scott never filed an administrative claim. *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 278 (2d Cir.2003) (observing that absent statutory language to the contrary, Second Circuit would not hold that Congress intended plaintiff to carry burden of establishing a negative proposition where such would impose an "enormous evidentiary burden" and citing cases including *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir.2003) (concluding Congress intended PLRA's administrative exhaustion requirement intended as an affirmative defense because, *inter alia,* prison official defendants have better access to prison records)).

**\*6** Further, an inmate's release from custody prior to the resolution of an administrative grievance has been held

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

to constitute a "special circumstance" in which administrative exhaustion is not required. *See Liner v. Goord*, 115 F.Supp.2d 432, 434 (S.D.N.Y.2000) (holding that where inmate filed grievance with IGP, but was released before appealing unfavorable administrative decision to Central Office Review Committee, administrative remedies were no longer available and, thus, inmate's § 1983 action against defendant prison officials could not be dismissed based on inmate's failure to exhaust). Nevertheless, courts have not excused a former inmate's failure to exhaust where the inmate had ample time to file a grievance and pursue administrative remedies prior to being released from custody. *See Finger v. Superintendent McGinnis*, 2004 WL 1367506, *5 (S.D.N.Y. June 16, 2004) (observing that upon inmate's release from incarceration, administrative remedies were no longer available, but that inmate was nevertheless not excused from exhausting administrative remedies because inmate had sufficient time to exhaust prior to release nine months later). Additionally, release from incarceration does not always end a plaintiff's obligation to pursue administrative remedies, particularly when the plaintiff is shortly thereafter reincarcerated at the same correctional facility where an earlier administrative grievance was filed. *See Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir.2004) (holding that administrative grievance procedures were "available" to plaintiff within the meaning of the PLRA's exhaustion requirement during inmate's three separate periods of incarceration at same correctional facility, even though second and third terms of incarceration were for offenses other than that for which plaintiff was initially confined and during which grievance arose).

In the instant case, Scott maintains that he filed an inmate grievance, but that he was unexpectedly released from the county jail before the grievance was resolved and, after his release, Scott did not further pursue the grievance. Plaintiff's Affidavit ¶¶ 11-15. Significantly, Defendants neither challenge Scott's assertion that he filed an administrative grievance, nor do Defendants argue that Scott should have filed his administrative grievance earlier and that had Scott done so, that there was ample time for the grievance to be resolved prior to Scott's release. Defendants also fail to argue that Scott's reincarceration at the county jail, the term of which is not provided in the record, in combination with Scott's earlier incarceration,

provided Scott with ample time to pursue his administrative grievance. Accordingly, Defendants have failed to meet their burden of establishing that Scott failed to sufficiently pursue his administrative remedies regarding the claims presently before the court.

Defendants' motion for summary judgment on the ground that Scott failed to pursue administrative remedies is therefore DENIED.

2. *Eighth Amendment Violation*

**\*7** Scott claims he was denied adequate medical care when, pursuant to a county jail policy, his request to bring his asthma medication with him to the city jail on the night of February 8, 2001, was denied, which resulted in Scott having to be transported to a local hospital for emergency care upon having an asthma attack at the city jail. Petition at 4. Scott seeks summary judgment on this claim on the basis that there is no genuine issue of fact that the challenged county jail policy exists and that such policy was unreasonably applied to Scott, resulting in a "severe deprivation" of his medical needs. Plaintiff's Memorandum at 1. Defendants argue in opposition to Plaintiff's summary judgment motion and in favor of Defendants' summary judgment request that Scott has failed to produce any evidence establishing a triable issue of fact that, as a result of the county jail's policy, the county jail staff was deliberately indifferent to a serious medical need. Defendants' Memorandum at 5-7; Defendants' Reply Memorandum at 4-7

Initially, the court observes that there is no merit to the assertions by both Scott and Defendants that because Scott had yet to be convicted of the criminal charges for which he was transported to the city jail in the evening of February 8, 2001, Scott's claims should be analyzed on the basis of Scott's status as a pretrial detainee under the Fourteenth Amendment. *See* Plaintiff's Memorandum at 1; Balon Declaration ¶ 7. Rather, although the asthma attack Scott suffered during the evening of February 8, 2001, occurred while Scott was being held at the city jail, a fair reading of the Petition establishes that it is the alleged denial of Scott's request for permission to take his asthma medication with him to the city jail that Scott is challenging. Petition at 4. Scott's request allegedly was denied by county jail officials pursuant to a county jail

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

policy, the enforcement of which allegedly is Defendant Sheriff Beilein's responsibility. *Id.* As such, Scott's claim for denial of adequate medical care is properly analyzed as a violation of the Eighth Amendment's proscription against cruel and unusual punishment .[FN5]

> [FN5.] Whether the Eighth Amendment or the Fourteenth Amendment applies is largely academic given that the same "deliberate indifference to a serious medical need" test is applied to both inmates and pretrial detainees alleging denial of adequate medical care. *Cuoco v. Moritsugu,* 222 F.3d 99, 106 (2d Cir.2000); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996).

It is well settled that the Eighth Amendment prohibits "cruel and unusual" punishment suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97 (1976). Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle, supra,* at 104 (bracketed text in original)). A serious medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Chance, supra,* at 702. Further, the standard for determining whether there has been an Eighth Amendment violation based on deliberate indifference to a prisoner's serious medical needs

**\*8** incorporates both objective and subjective elements. The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind.

*Smith v. Carpenter,* 316 F.3d 178, 183-84 (2d Cir.2003) (citing *Estelle, supra,* at 104, and *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)).

Denying or delaying access to medical care or intentionally interfering with prescribed treatment may constitute deliberate indifference. *Estelle, supra,* at 104; *see Harrison v. Barkley,* 219 F.3d 132, 138 (2d Cir.2000) (holding dentist's outright refusal for one year to treat a cavity, a degenerative condition that tends to cause acute infection and pain if left untreated, combined with imposition of an unreasonable condition on such treatment, could constitute deliberate indifference on the part of prison dentist, precluding summary judgment in defendant's favor). Such treatment violates the Eighth Amendment "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards by intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle, supra,* at 104-105. Further, culpable intent requires the inmate to establish both that a prison official "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes v. New York City Department of Corrections,* 84 F.3d 614, 620 (2d Cir.1996) (citing *Farmer, supra,* at 834-35).

In the instant case, Defendants assert in support of summary judgment that the denial of Scott's request to bring his asthma medication with him from the county jail to the city jail where Scott was to be housed overnight on February 8, 2001, did not amount to deliberate indifference to a serious medical need because Scott's "asthma is not a condition that may produce death, degeneration or extreme pain." Defendants' Memorandum at 5. In support of this argument, Defendants rely on the fact that the asthma attack that Scott suffered on February 8, 2001, was, "at worst, a very mild asthma exacerbation." *Id.* In further support, Defendants submit the affidavit of Robert Rattner, M.D. ("Dr. Rattner Affidavit"),[FN6] who explains that the medical records of the treatment Scott received at the hospital are "consistent with the standard of care for a patient experiencing a mild asthmatic exacerbation which consisted of taking five puffs with an asthma inhaler." Dr. Rattner Affidavit ¶¶ 5, 13. Dr. Rattner continues that Scott was discharged from the hospital's emergency room "within an hour of his arrival," that Scott never exhibited signs of diminished blood

Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

oxygen levels, and that a patient having more than a mild exacerbation of asthma would have a number of other findings upon examination, which Scott did not exhibit. Dr. Rattner Affidavit ¶ ¶ 6-12. Defendants thus maintain they are entitled to summary judgment because Scott has failed to point to any issue of fact that his asthma attack was serious enough to satisfy the objective prong of the deliberate indifference standard. Defendants' Memorandum at 5-6; Defendants' Reply Memorandum at 5. Defendants also argue they are entitled to summary judgment because Scott has failed to demonstrate a triable issue of fact that as a result of county jail policy, any county jail official was deliberately indifferent to Scott's serious medical needs. Defendants' Memorandum at 5-6; Defendants' Reply Memorandum at 6-7.

FN6. Exhibit C to Defendants' Notice of Crossmotion for Summary Judgment.

*9 The court first considers the objective prong of the standard for determining whether Scott's Eighth Amendment rights were violated by Defendants' deliberate indifference to his serious medical needs. A sufficiently serious condition is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, at 66. The mere fact that an inmate has an asthmatic condition does not necessarily mean that the inmate has a serious medical need, although an actual asthma attack, depending on the severity, may be a serious medical condition. See Patterson v. Lilley, 2003 WL 21507345, *3-4 (S.D.N.Y. June 30, 2003) (denial of asthma medication to asthmatic who alleged no discomfort or symptoms of an emergent attack does not satisfy objective component of deliberate indifference claim). Rather, the existence of the condition must be distinguished from a situation in which an inmate is actually experiencing an asthma attack. Patterson, supra (comparing and contrasting Ennis v. Davies, 1990 WL 121527 (S.D.N.Y. Aug. 15, 1990 (denying defendants' motion for summary judgment based on prison official's refusal to provide inmate with his asthma medication during an actual asthma attack), with Sulkowska v. City of New York, 129 F.Supp.2d 274 (S.D.N.Y.2001) (defendant's denial of pretrial detainee's asthma medication, in the absence of an asthma attack, amounted to nothing more than mere negligence and did not satisfy objective prong of

deliberate indifference test)). Similarly, in Patterson, supra, an inmate with an asthmatic condition, was denied access to his daily asthma medication upon arriving at a correctional facility, and was informed that he had to wait until the next morning before he could be screened for his medication. Patterson, supra, at *1. The inmate experienced an asthma attack the next morning, for which he received breathing treatment and was given oral medication. Id. The inmate later sued the prison officials for an Eighth Amendment violation based on the failure to provide him with his asthma medication, thereby causing the inmate to suffer an asthma attack. Id. at *2. The court held that because the inmate was never denied any treatment for an actual asthma attack, the objective prong of the deliberate indifference test was not met. Id. at * 4.

Significantly, in the instant case, when Scott's request for permission to bring his asthma medication with him to the city jail was denied, Scott was not then exhibiting any symptoms of an imminent asthma attack. Moreover, when Scott did experience an actual asthma attack while at the city jail, Scott was taken for medical treatment at the emergency room of a local hospital. Scott does not allege that such treatment was unduly delayed, or in any way insufficient to alleviate his symptoms. In contrast, the medical records Defendants submitted in support of summary judgment, the authenticity and accuracy of which Scott does not dispute, establish that Scott's asthma symptoms were alleviated by taking five puffs of a bronchiodilator, and that Scott, upon being discharged within an hour of his arrival at the local hospital, was free of asthma symptoms. Medical Records, Exhibit A to Dr. Rattner Affidavit. Accordingly, the record demonstrates that the objective prong of the deliberate indifference standard has not been met by the denial of Scott's request for permission to bring his asthma medication with him for the overnight stay at the city jail.

*10 The record also establishes that the subjective prong of the deliberate indifference test has not been met. Preliminarily, the court observes that Defendants' conduct must be examined only in the context of Scott's medical condition when his request for permission to take his asthma medication with him to the city jail was denied. Patterson, supra, at *4 and n. 3. However, the record is devoid of any indication that Scott was on the verge of

Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)

(Cite as: 2005 WL 425473 (W.D.N.Y.))

experiencing an asthma attack either when he requested his medication, or when the request was denied. Moreover, even if Scott was experiencing any symptoms of an asthma attack prior to being transported to the city jail, nothing in the record establishes, nor does Scott allege, that any Defendant observed such symptoms, yet failed to provide Scott with treatment. As such, the record demonstrates that the subjective prong of the deliberate indifference standard of culpable intent, *i.e.,* that a prison official both knew that Scott was experiencing a severe asthma attack, yet failed to take reasonable measures to abate any harm from the attack, *Hayes, supra,* at 620, also has not been met.

As neither the objective, nor the subjective prong of the deliberate indifference standard for establishing an Eighth Amendment violation based on the denial of adequate medical care for a serious medical need has been met, summary judgment is GRANTED in favor of Defendants and DENIED as to Scott.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for summary judgment (Doc. No. 63) and supplement motion for summary judgment (Doc. No. 64) are DENIED; Defendants' crossmotion for summary judgment (Doc. No. 72) is GRANTED. The Clerk of the Court is directed to close the file.

Any appeal to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in this action. *See* Fed.R.App. 4(a)(1). Further, the court certifies under Rule 24(a)(3)(A) of the Federal Rules of Appellate Practice that any appeal by Plaintiff of the foregoing Decision and Order would not be in good faith as the paucity of the record fails to establish a triable issue of fact for any Eighth Amendment claim. As such, requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24(a)(5) of the Federal Rules of Appellate Procedure.

SO ORDERED.

W.D.N.Y.,2005.

Scott v. DelSignore
Not Reported in F.Supp.2d, 2005 WL 425473 (W.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2003 WL 21756108 (S.D.N.Y.)

(Cite as: 2003 WL 21756108 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.

Woodrow & Lola FLEMMING, Plaintiffs,
v.
P.O. Edward VELARDI, et al., Defendants.
No. 02 Civ.4113 AKH.

July 30, 2003.

Plaintiff brought § 1983 action against city police officers and hospital where officers had taken him following arrest, alleging that he was denied treatment for injuries sustained during arrest in violation of Eighth Amendment. Hospital moved to dismiss, and plaintiff cross-moved for summary judgment. The District Court, Hellerstein, J., held that: (1) plaintiff failed to allege that he had sufficiently serious medical need for which hospital denied him treatment; (2) plaintiff's disagreement over proper medical treatment did not support deliberate indifference claim; and (3) plaintiff failed to make out a prima facie case for medical malpractice.

Hospital's motion granted, and plaintiff's motion dismissed.

West Headnotes

**[1] Prisons 310 ⟨⟩ 362**

310 Prisons

310III Pretrial Detention
310k361 Health and Medical Care
310k362 k. In General. Most Cited Cases
(Formerly 310k17(2))
**Sentencing and Punishment 350H ⟨⟩ 1546**

350H Sentencing and Punishment

350HVII Cruel and Unusual Punishment in General

350HVII(H) Conditions of Confinement
350Hk1546 k. Medical Care and Treatment.
Most Cited Cases

Arrestee's alleged back pain, asthma and chest pains did not rise to level of severe condition necessary to support Eighth Amendment claim under § 1983 that hospital where he was taken following arrest was deliberately indifferent to his medical needs. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

**[2] Prisons 310 ⟨⟩ 362**

310 Prisons

310III Pretrial Detention
310k361 Health and Medical Care
310k362 k. In General. Most Cited Cases
(Formerly 310k17(2))
**Sentencing and Punishment 350H ⟨⟩ 1546**

350H Sentencing and Punishment

350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1546 k. Medical Care and Treatment.
Most Cited Cases

Alleged failure of physicians to conduct certain tests on arrestee for his chest pains and asthma following arrest amounted to mere disagreement over proper treatment, which could not give rise to Eighth Amendment deliberate indifference claim against hospital. U.S.C.A. Const.Amend. 8.

**[3] Health 198H ⟨⟩ 675**

198H Health

198HV Malpractice, Negligence, or Breach of Duty
198HV(C) Particular Procedures
198Hk675 k. Cardiology; Circulatory System.
Most Cited Cases

Under New York law, alleged failure of physicians to conduct certain tests on arrestee for his chest pains and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21756108 (S.D.N.Y.)

(Cite as: 2003 WL 21756108 (S.D.N.Y.))

asthma following arrest did not deviate from accepted medical practice or cause arrestee to suffer any harm, as would support medical malpractice claim.

*MEMORANDUM AND ORDER GRANTING ST. BARNABAS' MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

HELLERSTEIN, J.

**\*1** Plaintiff Woodrow Flemming brought this Complaint pursuant to 42 U.S.C. § 1983 against Attorney General Eliot Spitzer, the New York City Police Department, the 46th Precinct, Police Officer Velardi, St. Barnabas Hospital, and certain doctors on duty at St. Barnabas Hospital on February 28, 2001, alleging that he was kicked, punched, and choked by at least ten police officers after he was stopped and searched, and that when he was taken to St. Barnabas Hospital after his arrest, the doctors denied him treatment. Following motions and by Order of December 10, 2002, I dismissed plaintiff's Complaint against Attorney General Eliot Spitzer; by Order of February 11, 2002, I dismissed plaintiff's Complaint against the New York City Police Department and the 46th Precinct.

By Motion of April 23, 2003, defendant St. Barnabas Hospital moved to dismiss the Complaint against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and plaintiff submitted papers responding to the motion on June 24, 2003. On July 18, 2003, plaintiff submitted a summary judgment motion, asking for summary judgment against all of the parties, except Attorney General Spitzer, whom he removed from the caption. Plaintiff also added to the caption the "ten named and unnamed police officers" (none of whom are actually named) who allegedly beat him; I thus assume that his summary judgment motion includes them as well.

For the reasons stated below, St. Barnabas' motion to dismiss is granted and plaintiff's cross-motion for summary judgment against St. Barnabas Hospital and the doctors who treated him is denied; the Complaint is dismissed as against St. Barnabas and the doctors who treated plaintiff on February 28, 2001. Plaintiff's motion for summary judgment against the New York City Police Department and the 46th Precinct is denied as moot since they were previously dismissed from the case, and his

summary judgment motion against Officer Velardi and the ten unnamed officers who allegedly took part in the beating of plaintiff is denied as premature.

I. St. Barnabas Hospital's 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion requires the court to determine whether plaintiff has stated a legally sufficient claim. A motion to dismiss under Rule 12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Branum v. Clark,* 927 F.2d 698,705 (2d Cir.1991). The court's function is "not to assay the weight of the evidence which might be offered in support" of the complaint, but "merely to assess the legal feasibility" of the complaint. *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). In evaluating whether plaintiff could ultimately prevail, the court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.,* 32 F.3d 697, 699-700 (2d Cir.1994). Moreover, a complaint submitted *pro se* must be liberally construed and is held to a less rigorous standard of review than formal pleadings drafted by an attorney. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986).

**\*2** Plaintiff alleges in his Complaint that St. Barnabas Hospital and the doctors who treated him there following his arrest on February 28, 2001, who have been identified as Dr. Regina Sexton, Dr. Edith Szabo, and Dr. Ashwin Shatty, were deliberately indifferent to his medical needs in violation of the Eighth Amendment and are liable for medical malpractice. Plaintiff contends in his Complaint that he was brought to the hospital following his arrest, unable to breathe due to asthma, and complaining of heart problems, but that the doctors refused properly to treat him. In his supplemental brief of June 24, 2003, plaintiff also alleges that he was having back problems due to the beating he received. He claims that he was given oxygen and an I.V. (intravenous medication), but that doctors refused to give him an MRI and to x-ray his entire body, which he requested. Plaintiff also asserts that despite his back problems, doctors refused to send him to a neurologist or to give him a CT scan.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21756108 (S.D.N.Y.)

(Cite as: 2003 WL 21756108 (S.D.N.Y.))

In order to bring an action under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a federal constitutional right. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Plaintiff's claim here is that St. Barnabas Hospital and the doctors that treated him violated his Eighth Amendment rights by failing to provide him with proper medical care. Deliberate indifference to the serious medical needs of someone in state custody is a violation of the Eighth Amendment to the United States Constitution, as it is the equivalent of "unnecessary and wanton infliction of pain" Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, in order for plaintiff to make out a claim that deliberate medical inattention rises to the level of constitutional violation, two requirements must be met. First, the plaintiff's medical need must be "serious." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir.1994). Second, the facts must give rise to a reasonable inference that the persons charged with providing medical care knew of those serious medical needs and intentionally disregarded them. Harrison v. Barkley, 219 F.3d 132, 137 (2d Cir.2000); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir.1998).

[1] The first question, then, is whether plaintiff's conditions-asthma, chest and back pain-were sufficiently serious. A condition is "sufficiently serious" if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, 37 F.3d at 66 (citing Nance v. Kelly, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting)). While severe back pain can constitute a serious condition, Nelson v. Rodas, No. 01 Civ. 7887, 2002 U.S. Dist. LEXIS 17359, at *50 (S.D.N.Y. Sept. 17, 2002) ("Severe back pain, especially if lasting an extended period of time, can amount to a 'serious medical need' under the Eighth Amendment."), plaintiff's allegations about his "back problems" and complaints that his back "hurt" do not rise to the level of a "serious condition." Cf. Gill v. Gilder, No. 95 Civ. 7933, 1997 U.S. Dist. LEXIS 1236, at *8 (S.D.N.Y. Feb. 7, 1997) (holding that occulta spina bifida, a common condition that can cause lower back pain, was not an urgent one that could have produced extreme pain or degeneration). Difficulty breathing due to asthma may be a serious medical condition, depending on the severity of the asthma attack. Compare Patterson v. Lilley, No. 02 Civ. 6056, 2003 U.S. Dist. Lexis 11097, at *12 (S.D.N.Y. June 30, 2003) (noting that while being an asthmatic is not a sufficiently serious condition, suffering an actual asthma attack is sufficiently serious); Ennis v. Davies, No. No. 87 Civ. 1465, 1990 U.S. Dist. Lexis 10500, at *8 (S.D.N.Y. Aug. 14, 1990) (holding that a jury could reasonably find that inmate's request for his asthma medication was sufficient to make the defendants aware of a serious medical need), with Croswell v. McCoy, No. No. 9:01-CV-00547, 2003 U.S. Dist. Lexis 3442, at *20 (N.D.N.Y. Mar. 11, 2003) (holding that wheezing incident to asthma was not a "serious medical condition"); Byas v. New York, No. 99 Civ. 1673, 2001 U .S. Dist. Lexis 20390, at *8-*9 (S.D.N.Y. Dec. 10, 2001) (holding that difficulty breathing because tubing in plaintiff's nose was blocked, infirmary was hot and stuffy, and plaintiff suffered from asthma was not a serious medical need). Plaintiff's allegations, however, are not that his asthma was a serious condition, but that he had temporary breathing difficulties when he was brought to the hospital after his arrest. Finally, a severe heart condition can be sufficiently "serious," see Adams v. Franklin, 111 F.Supp.2d 1255, 1270 (M.D.Ala.2000), but plaintiff's allegations are that he had "chest pains" and "discomfort" in his chest, and not that his heart problems rose to the level of severity that triggers an Eighth Amendment claim. Whether or not plaintiff asserts that his conditions were severe, plaintiff nevertheless fails to allege a claim of deliberate indifference because his contentions about the doctors' failure to treat him amount to little more than a disagreement about the proper course of treatment.

*3 [2] It is well-established that mere disagreement over proper treatment does not create a constitutional claim. Chance, 143 F.3d at 703. So long as the treatment given is adequate, the fact that plaintiff might prefer a different treatment does not give rise to an Eighth Amendment violation. Id. Plaintiff argues that he was denied adequate treatment because he was not given a full-body x-ray, an MRI, a CT scan, or a referral to a neurologist. However, he admits that he was treated for his asthma and his heart problem, and that he was given oxygen and an I.V. "The question whether an x-ray or

Not Reported in F.Supp.2d, 2003 WL 21756108 (S.D.N.Y.)

(Cite as: 2003 WL 21756108 (S.D.N.Y.))

additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment." *Estelle,* 429 U.S. at 107. Plaintiff's main complaint was that he had chest pain and could not breathe. His doctors adequately treated plaintiff for these conditions, and to the extent that he disagrees with their judgments respecting his treatment, the disagreement cannot ground a claim for deliberate indifference.[FN1] With respect to plaintiff's allegations that the doctors did not properly diagnose or treat his back problems, there is no Eighth Amendment claim because plaintiff has not alleged that his back pain was so severe or debilitating as to constitute a serious condition.

> FN1. Plaintiff's medical record shows that he was not only given oxygen and an I.V., but that he was also administered nitroglycerin and Tylenol. He was given a chest x-ray, two sets of blood tests, a blood gas analysis, and a urine analysis. Two EKGs were also performed on plaintiff.

[3] As for plaintiff's malpractice claim, it, too must be dismissed. First, plaintiff fails to make out a claim for medical malpractice. Under New York law, in order to make out a prima facie case for medical malpractice, plaintiff must allege that (1) the physician owed a duty of care to the plaintiff; (2) the physician breached that duty by deviating from accepted medical practice; and (3) the alleged deviation proximately caused plaintiff's injuries. *See Parker v. State,* 66 N.Y.S.2d 868, 869 (App. Div.3d Dep't 1997). Even construing plaintiff's claims broadly, he does not state a medical malpractice claim, as plaintiff has not alleged either that the doctors' refusals to provide him with MRIs, CT scans, or a referral to a neurologist deviated from accepted medical practice or that he suffered any harm because he did not receive these tests or the referral. Second, even if plaintiff did make out such a claim, this would not be the proper court in which to bring it. *See Estelle,* 429 U.S. at 107 (noting that proper forum for a medical malpractice claim is the state court). Since there are no novel or complex issues of state law involved here, the state-law claim does not substantially predominate over plaintiff's federal claims, and plaintiff's federal deliberate indifference claim is dismissed, even if

plaintiff could make out a prima facie claim for medical malpractice under state law, I would decline to take supplemental jurisdiction over it. 28 U.S.C. § 1367(c).

Accordingly, St. Barnabas Hospital's motion to dismiss is granted, and plaintiff's cross-motion for summary judgment is denied. The Complaint is dismissed as against St. Barnabas Hospital and the doctors, Dr. Regina Sexton, Dr. Edith Szabo, and Dr. Ashwin Shatty, who were on duty and treated plaintiff on February 28, 2001.

II. Plaintiff's Summary Judgment Motion Against the New York City Police Department and the 46th Precinct

**\*4** Plaintiff's summary judgment motion against the New York City Police Department and the 46th Precinct is denied as moot because I have already dismissed plaintiff's Complaint against those defendants. The New York City Police Department and the 46th Precinct's motions to dismiss were granted on the basis that plaintiff had not made out a proper *Monell* claim against those entities because he failed to allege that a specific custom or policy of the New York Police Department violated his constitutional rights. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). At the time the New York City Police Department and the 46th Precinct made their motions to dismiss, plaintiff was sent an Order explaining the effect of the motion and was given time to reply or to amend his Complaint. He did neither. The Complaint was consequently dismissed. Now, in his motion for summary judgment, plaintiff alleges that the NYPD's failure to train its police officers resulted in excessive force being used against him at the time of his arrest. Plaintiff's allegations come too late. While a set of allegations regarding a failure to train can support a *Monell* claim, *see City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992), plaintiff's conclusory and belated allegations, even as a *pro se,* cannot makeup for the deficiencies of his claim. Indeed, such conclusory allegations brought in a summary judgment motion cannot revive plaintiff's claim five months after the motion to dismiss was brought and granted, and over a year after the Complaint was filed.

III. Plaintiff's Summary Judgment Motion Against Ten

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21756108 (S.D.N.Y.)

(Cite as: 2003 WL 21756108 (S.D.N.Y.))

Unnamed Police Officers

Plaintiff's summary judgment motion against the ten unnamed officers who participated in his arrest is also denied. None of these ten police officers has been identified, and none has been served. In his original Complaint, plaintiff named "the office of the 46 pct on 2-28-2001." The complaint against the 46th Precinct was dismissed. Presumably, plaintiff intended to sue the "officers" of the 46th Precinct, but that is speculation.

Pleadings by a *pro se* litigant without ready access to lawyers must be liberally regarded. *Hughes,* 449 U.S. at 9; *Salahuddin,* 781 F.2d at 29. I will treat a letter from plaintiff of July 10, 2003, inquiring into the status of his Complaint against the ten unnamed officers, and plaintiff's motion for summary judgment, which I have to deny as not having merit, as a motion for leave to amend the Complaint to name specific, identified officers who arrested plaintiff and who plaintiff alleges beat him. I grant that motion for leave, and I direct Corporation Counsel to identify the officers who arrested plaintiff on February 28, 2001, and to provide plaintiff, within 30 days of this Memorandum and Order, each officer's name and last known address at which he can be served.

Plaintiff may then amend the Complaint to name the officers, if he believes that he has a reasonable basis to allege that these specific officers violated his constitutional rights. Plaintiff should allege specifically in his Amended Complaint the time, place, circumstances, and details of the alleged violations, and he must serve the Amended Complaint on each of the named officers.

IV. Plaintiff's Summary Judgment Motion Against Officer Velardi

**\*5** Finally, plaintiff's summary judgment motion against Officer Velardi is premature because, although Officer Velardi has been served and has answered, discovery has not yet begun on this claim. Plaintiff's motion is therefore denied.

Corporation Counsel has until August 28, 2003 to provide to plaintiff the information required of it. Plaintiff then has until September 29, 2003 to serve an Amended Complaint identifying the officers by name and providing the required details as to each of the officers. After the

Amended Complaint has been served and the officers who have been named therein have answered, this Court will schedule a case management conference with plaintiff, Officer Velardi, and any other officer named to discuss how to proceed in this case. Should Corporation Counsel be unable to identify any of the other officers involved in plaintiff's arrest, or should plaintiff fail to timely amend and serve his complaint, Corporation Counsel shall inform the Court so that a case management conference can be scheduled to discuss proceeding with plaintiff's claims against Officer Velardi.

SO ORDERED.

S.D.N.Y.,2003.

Flemming v. Velardi
Not Reported in F.Supp.2d, 2003 WL 21756108 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

**C**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Bernard PATTERSON, Plaintiff,
v.
Sharon LILLEY, Wladyslaw Sidorowicz, Ginger
Eggler, and William Brown, Defendants.
No. 02 Civ.6056 NRB.

June 30, 2003.

Prisoner brought federal civil rights suit against prison intake nurse, prison doctor, and two supervisors, alleging deliberate indifference to his asthmatic condition. Defendants moved to dismiss complaint for failure to state claim. The District Court, Buchwald, J., held that: (1) prisoner's asthma was not sufficiently serious to require care immediately upon his arrival at prison; (2) intake nurse was not deliberately indifferent to prisoner's medical needs; (3) prisoner's preference for treatment by particular doctor and his disagreements concerning method of treatment did not show deliberate indifference to his medical needs; (4) prison doctor's alleged remark about effect of budgetary constraints on treatment did not give rise to claim under facts; and (5) supervisors were not liable for alleged Eighth Amendment violations.

Motion granted.

West Headnotes

**[1] Prisons 310 ☞ 192**

310 Prisons

310II Prisoners and Inmates
310II(D) Health and Medical Care
310k191 Particular Conditions and Treatments
310k192 k. In General. Most Cited Cases
(Formerly 310k17(2))
**Sentencing and Punishment 350H ☞ 1546**

350H Sentencing and Punishment

350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
Prisoner's asthmatic condition was not sufficiently serious to give rise to Eighth Amendment violation when intake nurse informed prisoner at midnight that he would have to wait to following morning to receive medication; prisoner did not allege any discomfort at time or experience any symptoms of emergent attack. U.S.C.A. Const.Amend. 8.

**[2] Prisons 310 ☞ 192**

310 Prisons

310II Prisoners and Inmates
310II(D) Health and Medical Care
310k191 Particular Conditions and Treatments
310k192 k. In General. Most Cited Cases
(Formerly 310k17(2))
**Sentencing and Punishment 350H ☞ 1546**

350H Sentencing and Punishment

350HVII Cruel and Unusual Punishment in General
350HVII(H) Conditions of Confinement
350Hk1546 k. Medical Care and Treatment.
Most Cited Cases
Prison nurse was not deliberately indifferent to prisoner's serious medical needs in violation of Eighth Amendment when she informed him, during intake to prison, that he would have to wait until morning to be evaluated for asthma medications; nothing suggested that nurse acted with requisite mental state of criminal recklessness, where prisoner was not experiencing discomfort at time or any symptoms of emergent attack. U.S.C.A. Const.Amend. 8.

**[3] Prisons 310 ☞ 192**

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

310 Prisons

    310II Prisoners and Inmates
       310II(D) Health and Medical Care
          310k191 Particular Conditions and Treatments
            310k192 k. In General. Most Cited Cases
    (Formerly 310k17(2))
    **Sentencing and Punishment 350H**     **1546**

350H Sentencing and Punishment

    350HVII Cruel and Unusual Punishment in General
       350HVII(H) Conditions of Confinement
          350Hk1546 k. Medical Care and Treatment.
Most Cited Cases

    Prisoner's preference for examination by particular physician did not prove deliberate indifference to his serious medical needs, in violation of Eighth Amendment, where he did receive medical treatment between his arrival at facility and examination by physician of choice. U.S.C.A. Const.Amend. 8.

**[4]** **Prisons 310**     **192**

310 Prisons

    310II Prisoners and Inmates
       310II(D) Health and Medical Care
          310k191 Particular Conditions and Treatments
            310k192 k. In General. Most Cited Cases
    (Formerly 310k17(2))
    **Sentencing and Punishment 350H**     **1546**

350H Sentencing and Punishment

    350HVII Cruel and Unusual Punishment in General
       350HVII(H) Conditions of Confinement
          350Hk1546 k. Medical Care and Treatment.
Most Cited Cases

    Prisoner's disagreements with method in which his asthma was treated, including lowering medication dosage, changing medications, and for some period, taking him entirely off medication, involved mere difference of opinion, rather than deliberate indifference to his serious medical needs and thus could not violate Eighth Amendment. U.S.C.A. Const.Amend. 8.

**[5]** Sentencing and Punishment 350H     **1546**

350H Sentencing and Punishment

    350HVII Cruel and Unusual Punishment in General
       350HVII(H) Conditions of Confinement
          350Hk1546 k. Medical Care and Treatment.
Most Cited Cases

    Any alleged negligence on part of prison physician in treating prisoner did not rise to level of Eighth Amendment violation merely because patient was prisoner. U.S.C.A. Const.Amend. 8.

**[6]** **Prisons 310**     **192**

310 Prisons

    310II Prisoners and Inmates
       310II(D) Health and Medical Care
          310k191 Particular Conditions and Treatments
            310k192 k. In General. Most Cited Cases
    (Formerly 310k17(2))
    **Prisons 310**     **419**

310 Prisons

    310VI Costs of Incarceration
       310k419 k. Health and Medical Care. Most Cited Cases
    (Formerly 310k17(2))
    **Sentencing and Punishment 350H**     **1546**

350H Sentencing and Punishment

    350HVII Cruel and Unusual Punishment in General
       350HVII(H) Conditions of Confinement
          350Hk1546 k. Medical Care and Treatment.
Most Cited Cases

    Prison physician's alleged remark concerning possible effect of budgetary constraints on treatment for prisoner's asthma was insufficient to create Eighth Amendment violation; there was no withholding of treatment contemporaneous to remark, and prisoner did not suffer any attacks as result of later elimination of asthma medications. U.S.C.A. Const.Amend. 8.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

[7] **Civil Rights 78** 🗝 **1358**

78 Civil Rights

    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1358 k. Criminal Law Enforcement; Prisons.
Most Cited Cases
    (Formerly 310k17(2))
**Prisons 310** 🗝 **192**

310 Prisons

    310II Prisoners and Inmates
        310II(D) Health and Medical Care
            310k191 Particular Conditions and Treatments
                310k192 k. In General. Most Cited Cases
    (Formerly 310k17(2))
**Sentencing and Punishment 350H** 🗝 **1546**

350H Sentencing and Punishment

    350HVII Cruel and Unusual Punishment in General
        350HVII(H) Conditions of Confinement
            350Hk1546 k. Medical Care and Treatment.
Most Cited Cases

    Alleged failure of nurse administrator and another prison supervisor to act on prisoner's information about alleged indifference to his medical needs did not violate Eighth Amendment; supervisors were not personally involved in prisoner's medical treatment, no unconstitutional custom or practice was implicated, supervisory officials were not grossly negligent, and there was no underlying violation by medical personnel. U.S.C.A. Const.Amend. 8; 42 U.S.C.A. § 1983.

Mr. Bernard Patterson, Green Haven Correctional Facility, Stormville, New York, for Plaintiff.

Kimberly A. Dasse, Assistant Attorney General, New York, New York, for Defendant.

          MEMORANDUM AND ORDER

BUCHWALD, J.

    **\*1** Plaintiff Bernard Patterson ("plaintiff"), currently incarcerated in Central New York Psychiatric Center's satellite unit at Green Haven Correctional Facility, brings this action *pro se* against the following health care workers and staff members of Sullivan Correctional Facility, where plaintiff was formerly imprisoned: Nurse Ginger Eggler; Dr. Wladyslaw Sidorowicz; Nurse Administrator Sharon Lilley; and Deputy of Administrative Services William Brown (collectively, "defendants"). Plaintiff brings suit under 42 U.S.C. § 1983, alleging that defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by their deliberate indifference to his medical care. Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction due to a failure to exhaust administrative remedies required by the Prison Litigation Reform Act. 42 U.S.C. § 1197e(a). For the reasons that follow, the defendants' motion to dismiss for failure to state a claim is granted.[FN1]

        FN1. While the parties dispute whether the plaintiff has exhausted all of his claims, the defendants concede that he exhausted at least some of his administrative remedies, and as we dismiss the complaint on the merits, we need not resolve the exhaustion issue.

          *BACKGROUND* [FN2]

        FN2. Unless otherwise noted, all facts are taken from plaintiff's complaint.

    Plaintiff alleges that on December 19, 2001, at approximately twelve o'clock midnight, he arrived at Sullivan Correctional Facility ("Sullivan"). Upon arrival, he advised the processing officer that he was an asthmatic and had not received his medication for day. The processing officer notified the nurse of plaintiff's condition. Shortly thereafter, the processing officer returned and informed plaintiff that Nurse Ginger Eggler said plaintiff would have to wait until morning to be seen by anyone. Plaintiff was then escorted to a housing unit without being screened for medical or mental disorders and without receiving any asthma medication.

    The following morning, December 20, 2001, at approximately 8:20 a .m., plaintiff maintains he suffered

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

an asthma attack. Plaintiff was examined at the facility clinic, given breathing treatment, and provided oral medication. He was advised he would be called to the clinic to pick up his asthma medication that evening, but was never called. The following morning, plaintiff reported to the facility clinic to inquire why he had not been called to pick up his medication. Plaintiff avers he was informed that the doctor had lowered the dosage of his medication. Plaintiff inquired as to why his dosage had been lowered without a personal consultation by a doctor. Plaintiff does not state what the response was to this inquiry.

Plaintiff claims that because the dosage had been lowered, and because he was never evaluated properly, he suffered five additional asthma attacks on January 6, 9, 11, 13, and 14, 2002. However, plaintiff does not allege that he sought treatment at the infirmary for any of the attacks in January. Nonetheless, on January 14, 2002, plaintiff was examined by Dr. Wladyslaw Sidorowicz. During this examination, Dr. Sidorowicz put plaintiff on a different medication and further advised plaintiff to let him know if the new medication did not work and he would change it. Plaintiff also alleges that during this same examination, Dr. Sidorowicz told him that he intended to stop plaintiff's asthma medication in an effort to keep the budget down.

**\*2** On February 21, 2002, plaintiff alleges that he was placed in the infirmary as a result of inadequate medical treatment for his asthma, but he does not describe the reasons for his admission to the infirmary, the treatment he received, or when he was discharged. Plaintiff claims that on March 8, 2002, he informed a nurse that the new medication was not working and requested to be placed back on his original asthma medication. Several days later, on March 11, plaintiff maintains he reported to sick call and was told by a nurse that she had, in fact, spoken with Dr. Sidorowicz about his asthma medication, and that the doctor had decided to discontinue the medication because it was not working and chose not to prescribe anything in its place. Plaintiff suffered no additional asthma attacks.

Although the precise timing is unclear, plaintiff claims he wrote a letter to Nurse Administrator ("N.A.") Sharon Lilley explaining his unhappiness with the treatment he was receiving for his asthma. In her response

letter, plaintiff claims N.A. Lilley justified Nurse Eggler's screening upon his initial intake at Sullivan and Dr. Sidorowicz's decision to discontinue his medication. Plaintiff also claims he wrote a letter to Deputy of Administrative Services William Brown. Plaintiff does not describe the contents of his own letter, only that Deputy Brown advised plaintiff that his medication had been changed to a better regime with more effective medication. Plaintiff further avers that in a later letter from Deputy Brown, he was advised that "testing at this facility does not support your self diagnosis of asthma."

Plaintiff claims that as a result of the mental duress caused by this situation, he chose to cut his right forearm with a shaving razor on March 25, 2002. Plaintiff further avers that Dr. Sidorowicz initially refused to send him to an outside hospital to treat the wound, but that after being pressured by the mental health staff, the doctor sent him to an outside medical center where he received twenty stitches. Thereafter, on April 3, 2002, Dr. Sidorowicz placed plaintiff back on his original asthma medication.

Plaintiff herein has four complaints: (1) Nurse Eggler denied plaintiff his asthma medication upon his initial intake at Sullivan and did not properly screen him, such that if he were properly screened, he would not have been given a shaving razor due to his mental disorder; (2) Dr. Sidorowicz did not properly treat and failed to examine him earlier than January 14, 2002, and that prior thereto, plaintiff suffered six asthma attacks; (3) N.A. Lilley failed to act on the content of the plaintiff's complaint letter; and (4) Deputy Brown, a non-medical professional, should not have given a medical opinion in response to plaintiff's complaint letter, and failed to remedy the inadequate medical care of which plaintiff complained.

Plaintiff filed suit on August 23, 2002. He moved to have counsel assigned, which we denied on October 10, 2002. Defendants moved to dismiss on November 22, 2002.

*DISCUSSION*

I. Motion to Dismiss Standard

**\*3** A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the legal sufficiency of a complaint and

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

should be granted "only if it is clear that no relief could be granted under any set of facts consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In this context, our function is "merely to assess the legal feasibility of the complaint, not to assay the legal feasibility of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). We acknowledge, towards this end, the well-settled principle that the movant bears the burden of persuasion and that the nonmovant's well-pleaded factual allegations must be accepted as true. *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Moreover, a complaint submitted *pro se* must be liberally construed and is held to a less rigorous standard of review than formal pleadings drafted by an attorney. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Salahuddin v. Coughlin,* 781 F.2d 24, 28 (2d Cir.1986).

II. Eighth Amendment Standard

In an action brought under 42 U.S.C. § 1983, the plaintiff must establish that a person acting under color of state law deprived him of a federal constitutional right. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Here, plaintiff claims that defendants Nurse Eggler and Dr. Sidorowicz violated his Eighth Amendment rights by failing to provide him with proper medical care, and that defendants N.A. Lilley and Deputy Brown violated his Eighth Amendment rights by failing to properly address his complaints regarding such inadequate care.

The Eighth Amendment, made applicable to the states by the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishment." *See Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (holding that the Eighth Amendment is applicable to treatment and conditions of confinement for prison inmates). We are additionally mindful of the state's constitutional obligation to provide inmates with adequate medical care. *See Id.* at 832. Indeed, it is well-established that a prison official's denial of access to medical care or interference with prescribed treatment may constitute the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97,

104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Todaro v. Ward,* 565 F.2d 48, 52 (2d Cir.1977). To state a cognizable claim under § 1983 for inadequate medical care, an inmate must allege acts or omissions sufficiently harmful to evidence "deliberate indifference" to his serious medical needs. *Estelle,* 429 U.S. at 104. As such, the plaintiff must allege conduct that is "an unnecessary and wanton infliction of pain," or that is "repugnant to the conscience of mankind." *Id.* at 105-06.

The deliberate indifference standard "embodies both an objective and subjective prong" and the plaintiff must satisfy both prongs in order to establish that prison officials unconstitutionally deprived him of adequate medical care. *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied, sub nom. Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). First, the inmate's medical condition must be, in objective terms, "sufficiently serious." *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). A condition is "sufficiently serious" under the Eighth Amendment if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway,* 37 F.3d at 66 (citing *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting). Second, the charged official must act with a sufficiently culpable state of mind. *See Wilson,* 501 U.S. at 298. "Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." *Hathaway,* 37 F.3d at 66 (citing *Farmer,* 511 U.S. at 835-36). More specifically, a prison official does not act in a deliberately indifferent manner unless that official "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

III. Evaluation of Plaintiff's Claims

**\*4** Having set forth the two-part standard for deliberate indifference, we now consider whether plaintiff's allegations satisfy both the objective and subjective prongs with regard to each individual defendant.

A. Nurse Eggler

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

[1] Plaintiff claims that upon his intake at Sullivan he was denied his asthma medication by Nurse Eggler and was not properly screened for mental disorders. Assuming the truth of these allegations and viewed in the light most favorable to the plaintiff, they do not amount to a constitutional deprivation as they meet neither the objective nor subjective elements of the deliberate indifference standard.

At the time of Nurse Eggler's involvement, around midnight on December 19, 2001, she was informed only that plaintiff was an asthmatic and that he desired his medication. Plaintiff did not allege any discomfort or any symptoms of an emergent attack. Thus, plaintiff does not satisfy the objective component of a deliberate indifference claim. More than minor discomfort or injury is required for plaintiff to meet the objective prong of demonstrating a "sufficiently serious" medical need.

Being an asthmatic (a person susceptible to asthma attacks) is not a condition, in Eighth Amendment parlance, that is severe or "sufficiently serious." The existence of the condition is distinct from the situation in which an inmate is suffering an actual attack. Cf. *Ennis v. Davies,* No. 87 Civ. 1465, 1990 WL 121527 (S.D.N.Y. Aug.15, 1990) (denying a motion for summary judgment based on prison official's refusal to provide an inmate his asthma medication during an actual attack). Indeed, in *Sulkowska v. City of New York,* 129 F.Supp.2d 274 (S.D.N.Y.2001), where plaintiff was denied her asthma medication while a detainee in police custody, the court found that such conduct amounted to no more than mere negligence, not deliberate medical indifference, as asthma was not sufficiently serious to warrant Eighth Amendment protection in the absence of an attack or symptoms of an attack. [FN3] *Id.* at 292.

FN3. In contrast to the response at the time of plaintiff's midnight arrival, he received medical care the next morning when he had an attack. Nurse Eggler's conduct should be examined only in the context of plaintiff's condition at the time of his arrival at the facility. Nurse Eggler could only be held deliberately indifferent to an existing, serious medical condition, not a speculative, future medical injury. The requisite culpable state of mind would necessarily be absent for the unknown, future injury. Plaintiff's allegation that he cut his arm three months after arriving at Sullivan because he was not initially screened for mental disorders by Nurse Eggler (without making any indication or notification of such a disorder) also fails for this reason.

[2] Plaintiff's allegations concerning Nurse Eggler also fail to meet the subjective prong of the indifference claim. Plaintiff does not provide facts sufficient to find that Nurse Eggler acted with the requisite mental state of criminal recklessness. *See Hennings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). As noted, plaintiff never complained to Nurse Eggler of any pain, discomfort, or any condition that was "fast-degenerating" or "life-threatening." Nurse Eggler did not refuse to treat plaintiff altogether, but merely informed plaintiff when he arrived at midnight that he would have to wait until morning to be evaluated. Assuming that these allegations amount to negligent treatment, they are insufficient to state a claim for deliberate indifference, and plaintiff has not alleged any denial of care in the face of needed medical attention that would suggest a higher level of culpability. *See Estelle,* 429 U.S. at 106 (holding that a negligent diagnosis is not enough to meet the subjective test). Plaintiff's perspective that something more should have been done in light of his medical condition is not sufficient basis for a deliberate indifference claim. *See Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998).

**\*5** Accordingly, as plaintiff has failed to plead that Nurse Eggler was deliberately indifferent to a serious medical need of his, he has failed to state a claim against her for which relief may granted.

B. Dr. Sidorowicz

[3] Plaintiff makes a variety of claims against Dr. Sidorowicz. First, plaintiff contends that Dr. Sidorowicz did not personally examine him until January 14. However, even plaintiff's own complaint establishes that he did receive medical treatment between his arrival at the facility and his examination by Dr. Sidorowicz, and moreover, that a doctor was involved in that period of treatment. The record is unclear as to whether it was Dr.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

Sidorowicz or another physician who was involved in plaintiff's treatment before January 14. Indeed, plaintiff does not allege that any serious medical event between his arrival and January 14 (the date of his last alleged attacked) was knowingly untreated by health officials. Furthermore, on January 14, Dr. Sidorowicz did treat plaintiff. The Eighth Amendment requires that there not be deliberate indifference to a prisoner's serious medical needs, but not that a prisoner receive unfettered access to the medical care of his choice. *Alston v. Howard,* 925 F.Supp. 1034 (S.D.N.Y.1996). "Plaintiff's preference for an examination by a physician does not sustain a claim for denial of medical assistance. 'There is no right to the medical treatment of one's choice if the prescribed treatment is based upon applicable medical standards." ' *Reyes v. Turner,* No. 93 Civ. 8951, 1996 WL 93728, at *2 (S.D.N.Y. Mar.5, 1996) (quoting *McCloud v. Delaney,* 677 F.Supp. 230, 232 (S.D.N.Y.1988).

[4] Plaintiff also raises issues relating to the treatment of his asthma that involved changing his medication, lowering the dosage, and for some period, taking him off of his medication entirely. These complaints are properly characterized as a difference of opinion-plaintiff's desired treatment versus Dr. Sidorowicz's medical judgment-rather than deliberate indifference. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance,* 143 F.3d at 703; *Dean v. Coughlin,* 804 F.2d 207, 215 (2d Cir.1986). In fact, "so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id.* The government must provide medical care for its prisoners, *Estelle,* 429 U.S. at 103, but "the prisoner's right to medical care-not to the type or scope of medical care which he personally desires." *Linden v. Westchester County,* No. 93 Civ. 8373, 1995 WL 686742, at *3 (S.D.N.Y. Nov.20, 1995) (quoting *United States ex rel. Hyde v. McGinnis,* 429 F.2d 864, 867 (2d Cir.1970)). In fact, plaintiff's allegations, rather than reflecting indifference, reflect attention and include Dr. Sidorowicz's telling statement to plaintiff to let the doctor know if the medication was not effective so it could be changed.

**\*6** [5] At worst, plaintiff's allegations against Dr. Sidorowicz amount to negligence or medical malpractice. Even if we assume those conclusions *arguendo,* plaintiff's

claim must still fail because a "complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle,* 429 U.S. at 105-06; *Hathaway,* 99 F.3d at 553; *Farmer,* 511 U.S. at 837; *see also Vento v. Lord,* No. 96 Civ. 6169, 1997 WL 431140, at *4 (S.D.N.Y. July 31, 1997) ("[D]isagreement with the defendants' diagnoses and dissatisfaction with the treatment of her medical condition [are] allegations which are not actionable under the Eighth Amendment."). Further, allegations of negligence, medical malpractice, or errors in professional judgment are insufficient to sustain an Eighth Amendment claim. *See Zimmerman v. Macomber,* No. 95 Civ. 0882, 2001 WL 946383 (S.D.N.Y. Aug.21, 2001); *see also Gill v. Mooney,* 824 F.2d 192 (2d Cir.1987). It is also clear that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. *Estelle,* 429 U.S. at 106.

[6] Finally, we comment on one particular aspect of plaintiff's allegations, namely, the remark attributed to Dr. Sidorowicz concerning the possible effect of budgetary constraints on plaintiff's treatment. First, based on plaintiff's own allegations, there was no withholding of treatment contemporaneous to the alleged remark. Second, even when plaintiff was taken off his asthma medication weeks later, he did not suffer any attacks. Furthermore, it should be noted that consideration of cost factors in choosing a course of treatment of a prisoner is, in and of itself, no more violative of a prisoner's constitutional rights than is, for example, the consideration of the cost of providing prescription drug coverage to non-incarcerated recipients of Medicare.

C. N.A. Lilley and Deputy Brown

[7] Plaintiff asserts that he wrote letters complaining about his medical treatment to both N.A. Lilley and Deputy Brown. Plaintiff claims that N.A. Lilley failed to properly address the problems outlined in his complaint letter to her and that Deputy Brown improperly offered a medical opinion in his response to plaintiff's complaint letter to him. Plaintiff asserts N.A. Lilley wrote a response to him in support of the course of treatment plaintiff was receiving from Dr. Sidorowicz and the behavior of Nurse

Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)

(Cite as: 2003 WL 21507345 (S.D.N.Y.))

Eggler. In Deputy Brown's alleged response to plaintiff, he justified the medical regime implemented by Dr. Sidorowicz. Neither defendant, based on these facts alleged in plaintiff's complaint, can be said to have violated plaintiff's constitutional rights in any manner.

It is well-established that liability for damages under § 1983 may not be based on the *respondeat superior* or vicarious liability doctrines. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Koehl v. Dalsheim,* No. 94 Civ. 3351, 1995 WL 331905, at *2 (S.D.N.Y. June 5, 1995). The mere fact that a defendant occupies a position of authority will not merit the imposition of § 1983 liability. *See Al Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). A supervisor is not liable for civil rights violations committed by his subordinates; [FN4] to recover damages in a § 1983 claim, a plaintiff must demonstrate that the defendants were personally involved in the alleged wrongdoing. *Id; McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977) (holding that defendants' personal involvement is a prerequisite to recovery of damages under § 1983, since the doctrine of *respondeat superior* does not apply), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Personal involvement of a supervisory official within the meaning of § 1983 may be established through: (1) direct participation in a constitutional wrong; (2) failure to remedy a known wrong; (3) creation of an unconstitutional practice or custom; or (4) gross negligence in managing subordinates who have caused the violation. *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986); *Candelaria v. Coughlin,* 787 F.Supp. 368, 372 (S.D.N.Y.), *aff'd,* 979 F.2d 845 (2d Cir.1992). Plaintiff's complaint fails to meet any of the four circumstances recognized.

> FN4. We are assuming only for purposes of this decision that the relationship of supervisor/subordinate exists between the relevant actors.

**\*7** Plaintiff does not present any facts to suggest that the supervisory defendants were personally responsible for the alleged denial of medical care or in the alleged deprivation of plaintiff's rights. No unconstitutional practice or custom was created nor were the supervisory defendants grossly negligent in managing their subordinates. Moreover, as we find no underlying constitutional violations were committed by Nurse Eggler or Dr. Sidorowicz, N.A. Lilley's and Deputy Brown's alleged failure to act on information concerning such alleged violations does not support liability under § 1983. [FN5]

> FN5. Defendants argue additionally that they are not individually liable under § 1983 because they are entitled to qualified immunity. Because we dismiss plaintiff's claims on the merits, it is unnecessary to address this issue.

*CONCLUSION*

A *pro se* complaint can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Even applying these liberal standards, plaintiff's claims against each of the defendants is not cognizable under § 1983. Accordingly, we conclude that plaintiff's allegations of deliberate indifference to his medical needs fail to state a claim upon which relief can be granted. Defendants' motion to dismiss is granted.

Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444-45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). The Clerk of the Court is hereby requested to close this case on the Court's docket.

IT IS SO ORDERED.

S.D.N.Y.,2003.

Patterson v. Lilley
Not Reported in F.Supp.2d, 2003 WL 21507345 (S.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

(Cite as: 2005 WL 2125874 (S.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

S.D. New York.
Jamal KEARSEY, Plaintiff,
v.
Adeyemi WILLIAMS, Defendant.
No. 99 Civ. 8646 DAB.

Sept. 1, 2005.
*MEMORANDUM & ORDER*

BATTS, J.
**\*1** Plaintiff Jamal Kearsey, proceeding *pro se,* has filed the above-captioned case against Defendant Dr. Adeyemi Williams ("Dr.Williams") pursuant to 42 U.S.C. § 1983 alleging that Dr. Williams violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs. Defendant has moved to dismiss the Complaint for failure to exhaust administrative remedies, for failure to state a claim, and because Defendant is shielded by qualified immunity.[FN1] For the reasons stated herein, Defendant's Motion to Dismiss is DENIED.

> FN1. This Court granted Defendant's Motion to Dismiss for failure to exhaust administrative remedies in its June 6, 2002 Order but vacated that Order on September 20, 2004 upon Plaintiff's motion pursuant to Fed.R.Civ.P. 60(b). *See Kearsey v. Williams,* No. 99 Civ. 8646, 2004 WL 2093548 (S.D.N.Y. Sept. 20, 2004).

### I. BACKGROUND

In his Complaint, Plaintiff alleges that while he was incarcerated at Rikers Island Correctional Facility ("Rikers"), Defendant, a doctor at Rikers, violated Plaintiff's Eighth Amendment rights by refusing to provide him with an asthma pump when Plaintiff experienced breathing difficulties. Specifically, on April 4, 1999, Plaintiff requested to speak with a doctor because the heat

in his cell was aggravating his asthma. (Compl. at 3-4.) When Dr. Williams went to Plaintiff's cell, Plaintiff stated that his chest had "tighten[ed] up" and that he "couldn't breath[e]," and requested that Dr. Williams take him "downstairs" to get an asthma pump. (Id. at 4.) Dr. Williams declined to take Plaintiff downstairs but said that he would send a pump to Plaintiff's cell that evening. (Id.) After a period of time, a corrections officer called Dr. Williams and he also informed him of Plaintiff's medical condition. (Id.) Dr. Williams told the officer that he would bring the asthma pump. (Id.) Plaintiff alleges that Dr. Williams forgot to bring the pump. (Id.)

Plaintiff complained for a third time to Dr. Williams of his inability to breathe and stated that he was experiencing chest pain. (Id.) Once again, Dr. Williams responded by promising to send an asthma pump that evening. (Id.) Plaintiff subsequently asked for Defendant's name, to which Dr. Williams allegedly responded, "I won't send you anything now!" (Id.) Dr. Williams then handed Plaintiff a note with his name. (Id. at 5.) No pump was given to Plaintiff. Shortly after Dr. Williams left, Plaintiff borrowed an asthma pump from a fellow minute, although that pump was different from the one Plaintiff was used to. (Id.) Plaintiff complained of chest pains and breathing difficulties for the rest of the day. (Id.) On April 6, 1999, Plaintiff was having blood work done and spoke with a nurse about his medical condition. (Id.) The nurse ordered an emergency pump that arrived later in the day. (Id.)

On June 24, 1999, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendant exhibited deliberate indifference to his serious medical needs in violation of Plaintiff's Eighth Amendment rights. Defendant has filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), and, in particular, the exhaustion procedure established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, that Plaintiff failed to state a cause of action for which relief can be granted, and that Defendant is shielded from liability based on the doctrine of qualified immunity. (Def.'s Mem. Law at 1, 3, 20.) On June 6, 2002,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

(Cite as: 2005 WL 2125874 (S.D.N.Y.))

this Court issued an Order granting Defendant's Motion to Dismiss on the ground that Plaintiff failed to comply with the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. *Kearsey v. Williams,* No. 99 Civ. 8646, 2002 WL 1268014, at *2 (S.D.N.Y. June 6, 2002).

**\*2** Plaintiff filed a Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[FN2] Plaintiff argued that the Court had erred in holding that he was required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7, because those procedures are required only of inmates at state-run facilities, whereas Rikers, as a municipally-run facility, has different grievance procedures. *Kearsey,* No. 99 Civ. 8646, 2004 WL 2093548, at *2 (S.D.N.Y. Sept. 20, 2004). In its September 20, 2004 Order, the Court vacated its dismissal Order, finding Plaintiff was not required to exhaust the grievance procedures established by N.Y. Comp.Codes R & Regs., tit. 7, § 701.7. *Id.* at *4.

> FN2. Plaintiff was represented by counsel when he filed the 60(b) Motion.

Because the Court's June 6, 2002 Order did not reach the additional grounds in Defendant's Motion to Dismiss, the remaining motions were *sub judice.* In this Order, the Court considers Defendant's remaining arguments: that Plaintiff has failed to state a cause of action and that Defendant is entitled to qualified immunity.

## II. DISCUSSION

A. Rule 12(b)(6) Standard

In a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995) (citations omitted). "The district court should grant such a motion only if, after viewing [the] plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Harris v. City of New York,* 186 F.3d 243, 247 (2d Cir.1999). A court's

review of such a motion is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Burnheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). In fact, it may appear to the court that "a recovery is very remote and unlikely but that is not the test." *Branham v. Meachum,* 72 F.3d 626, 628 (2d Cir.1996).

These liberal pleading standards "appl[y] with particular force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se."* *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). It is well-settled that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 521 (1972).

B. Eighth Amendment

Defendant moves to dismiss the Complaint on the grounds that Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983.

1. Standard for § 1983 deliberate indifference claim

Section 1983 of Title 42, United States Code, enables a plaintiff to bring a cause of action against a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, a plaintiff bringing a § 1983 action must demonstrate that "the conduct complained of was committed by a person acting under color of state law ... [and that] this conduct deprived a person of rights ... secured by the Constitution or laws of the United States." *Greenwich Citizens Committee, Inc. v. Counties of Warren and Washington Indus. Development Agency,* 77 F.3d 26, 29-30 (2d Cir.1996) (quoting *Parratt v. Taylor,* 451 U.S. 527, 535 (1981)) (internal quotations omitted). Section 1983 is not in itself "a source of substantive rights," but instead "provides a method for vindicating federal rights elsewhere conferred." *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)).

**\*3** One such source of federal rights is the Eighth Amendment of the Constitution, which states that

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

(Cite as: 2005 WL 2125874 (S.D.N.Y.))

"[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. In *Estelle v. Gamble,* the Supreme Court held that prison employees' "deliberate indifference [to an inmate's] serious medical needs" violates the inmate's Eighth Amendment rights and is actionable under § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). A plaintiff pursuing a § 1983 claim for deliberate indifference to serious medical needs must meet a two-prong standard by demonstrating a serious medical need (the objective prong) and by showing that the defendant employee possessed the requisite culpable mental state (the subjective prong). *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

2. Serious medical need

The objective prong of the deliberate indifference standard requires a showing of a "sufficiently serious" medical need. *Hathaway,* 99 F.3d at 553 (internal quotations and citations omitted). While "it is a far easier task to identify a few exemplars of conditions so plainly trivial and insignificant as to be outside the domain of Eighth Amendment concern than it is to articulate a workable standard for determining 'seriousness' at the pleading stage," several factors are helpful in determining the seriousness of a medical condition. *Chance,* 143 F.3d at 702-03 (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1372 (7th Cir.1997)).

A serious medical need is generally characterized by "a condition of urgency that may result in degeneration or extreme pain" or "the unnecessary and wanton infliction of pain." *Chance,* 143 F.3d at 702 (citation omitted). Whether "a reasonable doctor or patient would find [the condition] important and worthy of comment or treatment" reflects on the seriousness of the medical need, as does the effect of the condition on the inmate's "daily activities" and the extent to which the condition causes "chronic and substantial pain." *Id.* (citation omitted). The refusal to treat a patient suffering from what ordinarily would not be considered a serious medical condition also raises Eighth Amendment concerns if the condition is easily treatable and degenerative. *See Harrison v. Barkley,* 219 F.3d 132, 136 (2d Cir.2000) (holding that "the refusal to treat an inmate's tooth cavity unless the inmate consents to

extraction of another diseased tooth constitutes a violation of the Eighth Amendment"). The constitutional implications of a decision not to treat an inmate's medical condition depend on the specific facts of the case–"a prisoner with a hang-nail has no constitutional right to treatment, but ... prison officials [who] deliberately ignore an infected gash ... might well violate the Eighth Amendment." *Id.* at 137-37 (internal quotations and citations omitted).

**\*4** While the failure to treat an inmate's generalized asthmatic condition may not implicate the Eighth Amendment, "an actual asthma attack, depending on the severity, may be a serious medical condition." *Scott v. DelSignore,* No. 02 Civ. 029F, 2005 WL 425473, at \*9 (W.D.N.Y. Feb. 18, 2005); *see also Patterson v. Lilley,* No. 02 Civ. 6056, 2003 WL 21507345, at \*3-4 (S.D.N.Y. June 30, 2003). Indeed, "it is common knowledge that a respiratory ailment, such as asthma, can be serious and life-threatening." *Whitley v. Westchester County,* No. 97 Civ. 0420, 1997 WL 659100, at \*4 (S.D.N.Y. Oct. 22, 1997). An acute asthma attack is inarguably a "condition of urgency" that may cause "substantial pain" and that "reasonable doctor[s] or patient[s] would find important and worthy of comment or treatment." *Chance,* 143 F.3d at 702 (citation omitted); *see Whitley,* No. 97 Civ. 0420(SS), 1997 WL 659100, at \*4.

Plaintiff has alleged that on three separate occasions, he informed Defendant that he was unable to breathe. (Compl. at 4-5.) He also complained that his chest had "tighten[ed] up," and, later, that he was experiencing "chest pains." (Id.) Plaintiff resorted to using a fellow inmate's inhaler when Defendant refused to provide him with one, which suggests the seriousness of his need. (Id. at 5.) Moreover, by alleging in his Complaint that his asthma "started to act up," Plaintiff describes a time-specific incident more in line with an asthma attack than with a generalized asthmatic condition. (Id. at 4.)

Defendant cites *Reyes v. Corrections Officer Bay,* No. 97 Civ. 6419, 1999 WL 681490 (S.D.N.Y. Sept. 1, 1999), as a case similar to this one where the court found that the plaintiff did not allege a sufficiently serious medical condition. However, unlike the plaintiff in *Reyes,* who went ahead with his scheduled visit with his family after

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

(Cite as: 2005 WL 2125874 (S.D.N.Y.))

complaining of an asthma attack, Plaintiff continued to complain to officers of his condition. Plaintiff resorted to self-medication, by borrowing an asthma pump from a fellow inmate in order to alleviate his condition. In light of these facts, it can hardly be said that Plaintiff was merely suffering from "discomfort."

Accordingly, the Court finds that in his Complaint, Plaintiff alleges facts that he experienced an asthma attack, serious enough to constitute a sufficiently serious medical need for purposes of an Eighth Amendment claim.

3. Deliberate indifference

To satisfy the subjective prong of the deliberate indifference standard, Plaintiff must prove that the prison official was aware of, and consciously disregarded, the prisoner's medical condition. *Chance,* 143 F.3d at 703; *see also Farmer,* 511 U.S. at 837. The prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Chance,* 143 F.3d at 702 (quoting *Farmer,* 511 U.S. at 837). While purposefully refusing to treat a serious medical condition constitutes deliberate indifference, it need not be the official's purpose to harm the inmate; "a state of mind that is the equivalent of criminal recklessness" is sufficient. *Hathaway,* 37 F.3d at 553.

**\*5** A physician's mere negligence in treating or failing to treat a prisoner's medical condition does not implicate the Eighth Amendment and is not properly the subject of a § 1983 action. *Estelle,* 429 U.S. at 105-06; *Chance,* 143 F.3d at 703. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106. Thus, a physician who "delay[s] ... treatment based on a bad diagnosis or erroneous calculus of risks and costs" does not exhibit the mental state necessary for deliberate indifference. *Harrison,* 219 F.3d at 139. Likewise, an inmate who disagrees with the physician over the appropriate course of treatment has no claim under § 1983 if the treatment provided is "adequate." *Chance,* 143 F.3d at 703. However, if prison officials consciously delay or otherwise fail to treat an inmate's serious medical condition "as punishment or for other invalid reasons," such conduct constitutes deliberate indifference. *Harrison,*

219 F.3d at 138.

In the instant case, Plaintiff informed Defendant on a number of occasions that he was unable to breathe and that he was experiencing chest pains. (Compl. at 4.) While Defendant's initial decision not to take Plaintiff downstairs for immediate treatment is the sort of prisoner-physician dispute regarding the particularities of medical care that is outside the scope of the Eighth Amendment, the unmistakable inference to be drawn from Plaintiff's allegation that Defendant refused to provide an asthma pump when Plaintiff asked for Defendant's name is that Defendant withheld medical care as retaliation or punishment for Plaintiff's conduct. (Id.) Because consciously delaying treatment in order to punish or retaliate against an inmate meets the subjective standard for deliberate indifference, the Court finds that the Complaint adequately alleges that Defendant acted with the requisite culpable mental state in refusing to treat Plaintiff's asthma attack.

C. Qualified Immunity

Defendant's final argument for dismissal is that, as a government official, Dr. Williams is entitled to qualified immunity.

At the outset, the Court notes that while a defendant may assert a qualified immunity defense on a Rule 12(b)(6) motion, "that defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright,* 386 F.3d 432, 434 (2d Cir.2004). This is because "[n]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (internal quotations and citations omitted). The plaintiff thus benefits from all reasonable inferences against the defendant's qualified immunity defense on a Rule 12(b)(6) motion. *Id.*

The defense of qualified immunity protects public officers, including prison physicians, from civil actions related to their conduct while they are acting in an official capacity so long as they do not "violate clearly established statutory or constitutional rights of which a reasonable

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

(Cite as: 2005 WL 2125874 (S.D.N.Y.))

person would have known." *Ford v. McGinnis,* 352 F.3d 582, 596 (2d Cir.2003). Such a defense "serves important interests in our political system. It protects government officials from liability they might otherwise incur due to unforeseeable changes in the law governing their conduct." *Sound Aircraft Services, Inc. v. Town of East,* 192 F.3d 329, 334 (2d Cir.1999). Qualified immunity also serves the important public interest of "protecting public officials from the costs associated with the defense of damages action ... [including] the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from accepting public positions." *Crawford-El v. Britton,* 523 U.S. 574, 590 at fn. 12 (1998).

**\*6** Qualified immunity shields a defendant from liability "if either (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Johnson v. Newburgh Englarged Sch. Dist.,* 293 F.3d 246, 250 (2d Cir.2001); *Brosseau v. Haugen,* 125 S.Ct. 596, 599 (2004) ("Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted"); *see also Harlow,* 457 U.S. at 818-19.

"[A] court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 603, 609 (1999); *see also Ying Jing Gan v. City of New York,* 996 F.2d 522, 532 (2d Cir.1993). Determining the constitutional question first serves two purposes: it spares the defendant of unwarranted demands and liability "customarily imposed upon those defending a long drawn-out lawsuit" and determining the constitutional question first "promotes clarity in the legal standards for official conduct, for the benefit of both the officers and the general public ." *Id.*

If a deprivation of a constitutional right has been alleged, a court must determine whether the constitutional right was clearly established by determining: (1) if the law was defined with reasonable clarity, (2) if the Supreme Court or the law of the Second Circuit affirmed the rule, and (3) whether a reasonable defendant would have understood from existing law that the conduct was lawful. *See Young v. County of Fulton,* 160 F.3d 899, 903 (2d Cir.1998). "[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 634, 640 (1987).

As the Supreme Court made clear in *Saucier,* determining whether the right in question was clearly established requires particularized, case-specific analysis. *Id.* at 201-02. The case-specific nature of the inquiry does not mean that official conduct is protected by qualified immunity whenever "courts had not agreed on one verbal formulation of the controlling standard." *Id* . at 202-03. A "general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct" even if courts have not ruled on the constitutionality of the specific act in question, and previously decided cases with comparable but not identical facts influence the clarity of the right in question. *Hope v. Pelzer,* 536 U.S. 730 at 741 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). The fundamental question is whether "the state of the law" at the time of the alleged violation gave the defendant "fair warning" that his conduct was unconstitutional. *Id.*

**\*7** Even if the right is clearly established, "defendants may nonetheless establish immunity by showing that reasonable persons in their position would not have understood that their conduct was within the scope of the established protection." *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998). "[R]easonableness is judged against the backdrop of the law at the time of the conduct.... [T]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau,* 125 S.Ct. at 599.

In the present matter, the Court has already determined that Plaintiff's allegations, taken as true, indicate that Defendant violated Plaintiff's Eighth Amendment rights by refusing to treat Plaintiff's asthma attack in retaliation for Plaintiff's request for Defendant's name. *See supra* at 10-13.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

(Cite as: 2005 WL 2125874 (S.D.N.Y.))

With regard to whether the right allegedly violated was clearly established at the time of the violation, neither the Supreme Court nor the Second Circuit has held that an asthma attack constitutes a serious medical condition for purposes of a deliberate indifference claim. In considering whether Defendant nonetheless had fair warning of the unconstitutionality of the conduct he is alleged to have engaged in, the Court notes that the Second Circuit has repeatedly held as unlawful denials of treatment that "cause or perpetuate pain" falling short of torture and not resulting in death. *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir.2003). Among the conditions the Second Circuit has deemed serious for Eighth Amendment purposes are a tooth cavity, *Harrison,* 219 F.3d at 137; a degenerative hip condition, *Hathaway,* 99 F.3d 550, 551-52; a painful tissue growth, *Brock,* 315 F.3d at 161; a ruptured Achilles tendon that caused pain and swelling, *Hemmings v. Gorczyk,* 134 F.3d 104, 106-07 (2d Cir.1998); and an eye condition that led to blindness in one eye, *Koehl v. Dalsheim,* 85 F.3d 86, 87 (2d Cir.1996). These various conditions, held to be sufficiently serious, are not life-threatening, although they are painful. An asthma attack, however, can be both painful and fatal. Given the state of the law in the Second Circuit, Defendant had ample warning that the law prohibits a prison doctor from consciously withholding medical care from an inmate with a painful and potentially fatal medical condition.

The Court finds that at this early stage of litigation, Defendant has not shown that he is entitled to qualified immunity.

### III. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is DENIED.

Defendant shall file an Answer to the Complaint within thirty (30) days of this Order.

SO ORDERED.

S.D.N.Y.,2005.

Kearsey v. Williams
Not Reported in F.Supp.2d, 2005 WL 2125874 (S.D.N.Y.)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.